**UNITED STATES of America ex rel. Carl MELTON, Appellant,**

v.

**Edward J. HENDRICK, Superintendent, Philadelphia Prisons.**

**No. 14439.**

United States Court of Appeals Third Circuit.

Argued Nov. 21, 1963.

Decided April.3, 1964.

James Francis McCort, Philadelphia, Pa., for appellant.

William H. Wolf, Jr., Philadelphia, Pa. (Arthur J. Marion, Asst. Dist. Atty., Arlen Specter, Asst. Dist. Atty. Chief, Appeals Division, F. Emmett Fitzpatrick, Jr., First Asst. Dist. Atty., James C.

Crumlish, Jr., Dist. Atty., Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and GANEY, Circuit Judges.

KALODNER, Circuit Judge.

This appeal is from the Order of the District Court denying Carl Melton's petition for a writ of habeas corpus which was premised on his contention that he had been subjected to double jeopardy and cruel and inhumane punishment by the Pennsylvania courts in violation of federal constitutional guarantees.

In April, 1959 Melton pleaded guilty and then changed his plea to "Not Guilty" in the robbery slaying of Rose Schloss. A jury found him guilty of murder in the first degree and fixed the penalty at death. The court en banc granted Melton's motion for a new trial on the ground that an aggregate of prejudicial events at the trial, including an emotional outburst by the bereaved husband of the murdered woman "created such an inflammatory atmosphere that the jury's determination may well have been based upon other than the substantive factual evidence introduced." The Commonwealth appealed to the Pennsylvania Supreme Court contending that the court en banc abused its discretion in granting a new trial. The Commonwealth's appeal was dismissed on the ground that it had no right of appeal inasmuch as the new trial had been granted for factual reasons—prejudicial events at the trial—and under settled Pennsylvania law "It is only where the question involved is purely one of law that the Commonwealth may appeal from an ad-

verse ruling in a criminal case * * *." Commonwealth v. Melton, 402 Pa. 628, 629, 168 A.2d 328, 329 (1961).

Melton's contention at his second trial that the Commonwealth's appeal constituted double jeopardy and violated his constitutional rights was rejected and he then pleaded guilty to murder. In conformity with Pennsylvania criminal practice a three-judge court then held a hearing at which considerable evidence was presented relating to Melton's crime, his early life, environmental background and mentality. Two psychologists and a neuropsychiatrist testified in Melton's behalf that he was a "mental defective", but able to distinguish between right and wrong. The evidence established that Melton had completed the ninth grade in school; he had served in the United States Marine Corps for over a year when he was discharged because of flat feet; at the time of the murder he was 29 years old; married but separated from his wife; the father of five children.[1]

The three-judge court found Melton guilty of murder in the first degree and sentenced him to death. He appealed on the grounds that (1) he had been placed in double jeopardy by the Commonwealth's appeal in violation of his Constitutional rights; (2) the evidence was insufficient to sustain his conviction of murder in the first degree; and (3) the sentencing court abused its discretion when it fixed the penalty at death.

The Pennsylvania Supreme Court, after an exhaustive review of the evidence and law applicable to Melton's contentions, affirmed the judgment and sen-

[1]. The evidence relating to the commission of the crime may be summarized as follows: On December 13, 1958, about 9 P. M., Melton met one Rucker at a bar and suggested to him that they rob the Schloss delicatessen store across the street; Melton led Rucker to the Schloss property and he broke in the pavement cellar door and led the way into the first floor where they encountered 65-year old Schloss; Melton repeatedly struck Schloss on the head with a hatchet until it broke and then beat him time and again with a three foot brass door chime into unconscious-

ness and again when he regained consciousness; Rucker attacked 63-year old Mrs. Schloss, beat, kicked and then stabbed her to death with a butcher knife; Melton then beat Schloss with a brass pipe until he disclosed the presence of several hundreds of dollars in a bureau drawer; Melton and Rucker went to a nearby house where Melton "divided" the proceeds of the robbery-murder, cheating Rucker out of $105 which he had hidden inside his sock; they were arrested shortly thereafter, confessed and reenacted the crime.

tence. Commonwealth v. Melton, 406 Pa. 343, 178 A.2d 728 (1962). Certiorari was denied by the Supreme Court of the United States, 371 U.S. 851, 83 S.Ct. 93, 9 L.Ed.2d 87 (1962).

In his petition to the District Court for habeas corpus relief Melton contended only that rights guaranteed by the Constitution of the United States had been violated in that he had been subjected to double jeopardy by the Commonwealth's appeal and "cruel and unusual punishment" when he was sentenced to death despite the fact that he is a "mental defective."

In denying Melton's petition the District Court held with respect to the double jeopardy issue that the Pennsylvania Supreme Court had not decided the Commonwealth's appeal on its "merits" but had dismissed it for lack of appealability and that "even if the Pennsylvania Supreme Court had decided the matter on the merits, one would not be justified in holding that double jeopardy was involved in the appeal." United States v. Hendrick, 218 F.Supp. 293, 295 (E.D. Pa.1963).

 We agree with the District Court's holding that under Pennsylvania law Melton "waived his protection against being tried again for the same offense by his application for a new trial, since the court considers that the first jeopardy in which he was placed continues until the time of imposition of legal sentence at a subsequent trial." 218 F.Supp. 295. We are in accord, too, with the District Court's holding that the Fourteenth Amendment is not offended when the state is the moving party in an appeal from an order of the trial court granting a defendant's motion for a new trial following a jury's return of a verdict of guilty. It would serve no useful purpose to elaborate on Judge Van Dus-

en's excellent discussion of dispositive state [2] and federal decisions.[3] As he so well stated:

> "The Pennsylvania procedure, as followed in this case, does not violate that standard of permissible process of law guaranteed by the Fourteenth Amendment since it does not violate 'the very essence of a scheme of ordered liberty' and because its continuance would not 'violate a "principal of justice so rooted in' the traditions and conscience of our people as to be ranked as fundamental." ' Bute v. Illinois, 333 U.S. 640, 659, 68 S.Ct. 763, 773, 92 L.Ed. 986 (1948)."

We are further of the opinion that the District Court did not err in holding that the death sentence imposed on Melton did not violate the cruel and unusual punishment provisions of the federal constitution.

 As earlier stated, Melton's contention that the death sentence constitutes cruel and unusual punishment is premised on the fact that he is a "mental defective". He has never contended that he was insane at the time of the murder nor does he contend that he was then unable to distinguish between right and wrong. The record discloses that Melton's counsel expressly stated at the sentencing proceedings that he was not attempting to prove that his client was insane but was only presenting the evidence as to his client's mental condition *in mitigation* of punishment.

The hard core then of Melton's contention is that it is "cruel and unusual punishment" to sentence a mental defective to death when he has been convicted of murder in the first degree.

Melton has not cited to us any authority to support his contention in this respect.

---

2. Commonwealth ex rel. Patrick v. Banmiller, 398 Pa. 163, 164–165, 157 A.2d 214 (1960); Commonwealth ex rel. Farrow v. Martin, 387 Pa. 449, 450–451, 127 A.2d 660 (1956), cert. den., Farrow v. Commonwealth of Penn., 353 U.S. 986, 77 S. Ct. 1288, 1 L.Ed.2d 1144 (1957).

3. Forman v. United States, 361 U.S. 416, 425, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960); United States v. Shotwell Mfg. Co., 355 U.S. 233, 243–244, 78 S.Ct. 245, 2 L.Ed. 2d 234 (1957); Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 271 (1937).

The Pennsylvania Act of June 24, 1939, P.L. 872, § 701, as amended by the Act of December 1, 1959, P.L. 1621, § 1, 18 P.S. § 4701 provides in relevant part:

"In cases of pleas of guilty, the court where it determines the crime to be murder of the first degree, shall, at its discretion, impose sentence of death or imprisonment for life."

The Pennsylvania Supreme Court has time and again ruled that a death sentence may be imposed in first degree murder cases even though the defendant "was a moron or a mental defective * * * or * * * an unstable, mentally defective moron, or was feeble-minded." Commonwealth v. Smith, 405 Pa. 456, 459, 176 A.2d 619, 620 (1962). In Commonwealth v. Graves, 394 Pa. 429, 147 A.2d 416 (1959) the defendant, a mental defective, entered a plea of guilty to murder generally. After hearing evidence the three-judge sentencing court found him guilty of murder in the first degree and sentenced him to death. The Supreme Court rejected his contention that he should have been sentenced to life imprisonment instead of death because he was mentally deficient, and held that the sentencing court had not abused its discretion in imposing the death sentence. In doing so the Court ruled that the scope of its review was limited to a determination whether the sentencing court had abused its discretion in imposing the death penalty.

In Commonwealth v. Elliott, 371 Pa. 70, 89 A.2d 782 (1952), the Supreme Court held that the imposition of the death penalty, following a guilty plea, on "an aggressive, unstable, dangerous moron who was mentally defective" was not an abuse of discretion on the part of the sentencing court. In doing so, it stated (371 Pa. p. 75, 89 A.2d p. 785):

"Mental deficiency is a fact which always should be and in this case was taken into consideration in determining and fixing the penalty or

sentence. However, no case in Pennsylvania has ever decided that a trial Judge or a Supreme Court *must, as a matter of law*, reduce a sentence from death to life imprisonment because the defendant is an unstable, weak moron or a mental defective.

Here, the District Court found that evidence as to Melton's mental condition was fully explored and considered by the sentencing court and by the Pennsylvania Supreme Court in its review of the sentence.

The record fully sustains the District Court's finding.

We agree, too, with the District Court's determination that (218 F.Supp. p. 297):

"The punishment imposed in this case is not out of all proportion to the offense disclosed by the record [participation in a robbery during which there were brutal and inhumane beatings of a man (by the defendant and a co-defendant) and his wife (by the co-defendant), resulting in the death of the wife]. * * This punishment is not beyond the 'extent' and 'mode permitted by the common law for offenses of a similar nature.' See quotation from Cooley's 'Constitutional limitations' in Weems v. United States, supra, 217 U.S. (349) at p. 375, 30 S.Ct. (544) at 552, 54 L.Ed. 793."

We are of the opinion that the imposition, in a first degree murder case, of a death penalty on a mental defective by a state court which has fully considered the defendant's mental condition, is not *per se* violative of the Fourteenth Amendment's proscription of cruel and unusual punishment. To hold otherwise would be to "withdraw the freedom of a State to enforce its own notions of fairness in the administration of criminal justice",[4] and to substitute a federal concept of penological policy for that entertained by a state even though the state's

---

4. Mr. Justice Frankfurter's concurring opinion in Louisiana ex rel. Francis v.

Resweber, (1947) 329 U.S. 459 at page 469, 67 S.Ct. 374, 91 L.Ed. 422.

policy cannot be said to do violence to the historic meaning of "cruel and unusual punishment."

For the reasons stated the Order of the District Court will be affirmed.[5]

5. In Note 7, 218 F.Supp. at p. 296 the District Court expressed doubt as to whether Melton had exhausted his state remedies with respect to his contention that he had been subjected to cruel and unusual punishment in violation of federal constitutional rights. On that score we need only say that in In re Ernst's Petition, 294 F.2d 556, pp. 561, 562 (1961), cert. den. 368 U.S. 917, 82 S.Ct. 198, 7 L.Ed.2d 132, we expressly held that: "Denial of a state prisoner's petition for habeas corpus on its merits remains permissible under Section 2241 even though state remedies may not have been exhausted." We recently re-affirmed that holding in United States ex rel. Drew v. Myers, 327 F.2d 174, 183 (1964).