Commonwealth *v.* Servey, Appellant.

434

Submitted January 16, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*John P. Campana,* for appellant.

*Allen E. Ertel,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, May 9, 1969:

After four days of trial on charges of armed robbery, larceny and murder, appellant requested leave to change his plea from not guilty to guilty. Following an extensive on-the-record investigation into appellant's understanding of the nature of the charges against him, the consequences of his plea, the voluntariness of his decision to enter a guilty plea, and his satisfaction with the assistance rendered him by his two court-appointed attorneys, the court accepted the plea of guilty. After appellant executed a Consent and Waiver of his right to have the court en banc determine the degree of his guilt and the sentence, the trial court found the defendant guilty of murder in the first degree and sentenced him to life imprisonment. At the time of determination of the degree of guilt, again prior to imposing sentence, and then immediately after sentencing, the trial judge questioned Servey as to the voluntariness of his plea and as to his understanding of the charges against him and of the consequences of his plea.

Servey thereafter filed a post-conviction petition, alleging, inter alia, that despite his repeated assertions at the time of trial that his plea was voluntary, it had in fact been the involuntary result of coercion. The court below held an evidentiary hearing, found no merit in this contention, and denied the petition. This appeal followed, and the voluntariness of the plea is the principal issue pressed on appeal.

The incident which gave rise to these charges was a robbery of the Greystone Garage in Williamsport, during which the attendant was shot twice and killed and $700 was stolen. In the course of the trial, the Commonwealth introduced evidence that placed appellant at the garage five minutes before the shooting. The evidence also showed that a revolver recovered from Servey's car contained two expended cartridges, one of .38 calibre and one of .357 magnum calibre, the same calibre as the two bullets recovered from the garage after they had passed through the victim. The cartridges were in the revolver in the same order as the two recovered lethal bullets had been fired. In addition, $383 was recovered from Servey's wallet and automobile at the time of his arrest, although he had been unemployed prior to the robbery and had been living on handouts of less than $10 from members of his family.

After the Commonwealth had introduced the above evidence, it called as a final witness Servey's half-brother, one Caputo. At this point appellant's counsel requested an offer of proof, and in appellant's presence the Commonwealth indicated that Caputo would testify that Servey had shown him the revolver six days before the robbery-murder and announced his intention to rob the Greystone Garage, leaving no witnesses. After hearing this offer, appellant's counsel requested a recess. Thereafter Servey asked leave to change his plea.

During the recess immediately before his change of plea, appellant conferred with his counsel, his minister and four members of his family. Servey's present assertion that his guilty plea was involuntary and hence should be withdrawable rests on the proposition that the plea was coerced by a fear of death in the electric

chair engendered during this conference. He maintains that this fear was his sole reason for changing his plea, although he was fully aware that the judge himself could impose the death sentence and had specifically refused to promise any lesser sentence.

The record clearly shows that appellant's trial attorneys and his family, at his attorneys' request, did urge him to change his plea during the conference. In view of the evidence already introduced at that point and the prospect of Caputo's testimony, it is difficult to fault this advice. The post-conviction hearing reveals that the appellant's lawyers had found his own story, yet to be presented to the jury, "so completely unbelievable" in light of the Commonwealth's case, that they viewed the testimony Caputo was about to give as "the final straw". If the trial continued, conviction of first degree murder and a death sentence seemed a likely outcome. Furthermore, the appellant never contended during the post-conviction hearing that the ultimate decision to plead guilty was not his alone. While the record shows that his action was influenced by the urging of his attorneys and his family, the choice to plead guilty was ultimately Servey's. This conclusion is inescapable, since he himself testified to that effect at his post-conviction hearing: "Question by Court: Now were you forced to plead guilty, or when it came down to it, are they correct that it was finally your decision? Answer by Defendant: Well, I made the final decision." (N.T. p. 69)

It is well settled that an appellant has the burden of demonstrating that his guilty plea was involuntarily made. There is no absolute right to withdraw a guilty plea. *Commonwealth v. Allen*, 428 Pa. 113, 237 A. 2d 201 (1968); *Commonwealth v. Phelan*, 427 Pa. 265, 274, 234 A. 2d 540 (1967), *cert. denied*, 391 U.S. 920

(1968). Only one of the several possible bases for the withdrawal of a guilty plea [see *Commonwealth v. Scoleri*, 415 Pa. 218, 247-248, 202 A. 2d 521 (1964)] is even arguably pertinent to the present appeal: "Where the plea was induced by fraud or threats or justifiable fear". We cannot conclude that the scope of "justifiable fear" encompasses fear of a jury's imposition of the death penalty where that fear is engendered by the advice of competent counsel based on their considered appraisal of the evidence introduced against their client. Were the fear here alleged the fear of abandonment by counsel if the appellant had not changed his plea, the criterion above quoted might be applicable. Such is not the case. We find no basis for any inference that counsel would either have abandoned appellant or failed to devote their best efforts to his defense had he not changed his plea. Indeed, the evidence is to the contrary. We agree with the court below that appellant's change of plea was voluntary. Having conducted exemplary and detailed examinations relative to appellant's understanding of his plea on five separate occasions in the course of the trial, Judge GREEVY was fully justified in concluding after the post-conviction hearing that he was "satisfied on February 9, 1967, and . . . satisfied today that the guilty plea was voluntarily, competently, understandingly and intelligently entered."

Appellant's further contention that the selection of the jury in this case was contrary to the mandate of the Supreme Court of the United States in the case of *Witherspoon v. Illinois*, 391 U.S. 510 (1968), is wide of the mark. Whether prospective jurors having conscientious objection to the imposition of the death penalty were excluded by the Commonwealth's challenges for cause does not appear from the record before us,

although appellant's brief indicates that one challenge for cause on this ground was allowed. Even so, *Witherspoon* held that where such challenges were allowed, only the death sentence, and not the conviction, would be invalidated. See *Commonwealth v. Wilson*, 431 Pa. 21, 244 A. 2d 734 (1968). In the case at bar, not only was no death sentence imposed, but the sentence that was imposed, that of life imprisonment, was imposed by the court. The jury had been dismissed when the trial judge accepted the plea of guilty.

The order of the court below is affirmed.

Mr. Justice ROBERTS concurs in the result.