## Commonwealth *v.* Timmons, Appellant.

Submitted April 20, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Ralph W. D. Levan*, Assistant Public Defender, for appellant.

*Grant E. Wesner*, Assistant District Attorney, and *Robert L. Van Hoove*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, October 9, 1970:

On June 4, 1963, the fifth day of appellant's trial for the murder of Harry Yeager, appellant changed his plea from not guilty to guilty, and, at the same time, pleaded guilty to the murder of John Batdorf. Upon agreement of defense counsel, the previous four days of trial were then incorporated into the record and the trial judge proceeded to take evidence as to both murders in order to determine the degree of guilt. Con-

cluding that appellant was guilty of murder in the first degree in both homicides, the trial judge sentenced appellant to life imprisonment on each indictment, the sentences to run consecutively. Post-trial motions were not filed, and no appeal was taken.

In 1967 appellant filed a petition pursuant to the Post Conviction Hearing Act alleging, inter alia, that his pleas were not knowingly and intelligently entered, and that he had been unconstitutionally denied his right to appeal. Counsel was appointed, a hearing held, and relief denied on all claims. No appeal was taken.

In 1969 appellant filed another PCHA petition. After appointment of counsel and an evidentiary hearing, the hearing court determined that appellant had not waived his right to appeal from the denial of his first PCHA petition. Appellant then prosecuted this appeal, raising as error the determination that his pleas were knowingly and intelligently entered, and the determination that he had committed first degree murder. We are unable to find that these determinations, which are adverse to appellant, constitute error, and we must therefore affirm.

Appellant argues that he was unable to knowingly and intelligently enter his guilty pleas because of his lack of mental capacity. See, e.g., *Commonwealth ex rel. Hilberry v. Maroney,* 417 Pa. 534, 207 A. 2d 794 (1965). In support of this contention he cites the factors listed by the trial court as reasons for not imposing the death penalty: appellant can neither read nor write, is of "borderline intelligence," and, according to psychiatric testing, cannot make moral decisions in accordance with the usual norms of society. See *Commonwealth v. Timmons,* 56 Berks 89, 93-94 (1963). Appellant also points to the testimony he gave at trial when he changed his plea,[1] and testimony given by a

---

[1] "When they [defense counsel] bring my whole family in to ask me to plead, which does not give too much confidence in them,

relative at the PCHA hearing,[2] such testimony tending to indicate that appellant was under family pressure to plead guilty and did not fully understand what he was doing.

We agree that this evidence could very well have been sufficient to support a finding that appellant did not knowingly and intelligently enter his pleas. Compare *Commonwealth v. Harris,* 431 Pa. 114, 243 A. 2d 408 (1968). But there was additional testimony from which the hearing court could quite properly draw the conclusion that appellant's guilty pleas were knowingly entered in accord with a plea bargain designed to avoid the death penalty.

---

which they have not directly asked me up at the jail. They referred to it. I thought, well, maybe, I think, I don't know, maybe, I think, I thought it would be, maybe the best way would be going through the trial in order to try to bring out some of the things that had happened. It is going a little bit that way. It don't prove anything. So I don't know if it would be best for me to plead or what. I am in a sweat, and I cannot have the pressure of my people or the lawyers trying to push me into it. I did want to go along with hearing some of the stuff to see how it would go, which I have stated to them up there at the jail after I would hear a little bit, to see the way it is going. I have no confidence no more and the only thing I can do is ask for a plea."

Following this statement, appellant conferred with counsel, and then changed his plea.

[2] "A. . . . [W]e were more concerned with him pleading guilty than anyone. He didn't seem to worry about the death penalty, but he did not understand what he was pleading guilty to. I tried to get him to plead guilty because he was guilty. We felt he was. He said he was pleading guilty to first-degree murder but he didn't understand that. I said it was to murder generally. We were all in that room. . . . By The Court: Q. Are you satisfied that the ultimate decision made was Mr. Timmons's decision? A. At the end, yes. I guess you could say we prompted him. Q. You encouraged him? A. Yes, wholeheartedly. It might well have been his decision if he had been left alone. I think I probably caused him to decide it more than anyone."

Initially, there is a careful on-the-record colloquy in which the trial court questioned appellant on whether he understood what he was doing, told appellant of the possible alternative sentences the jury could impose, the procedure to be followed if appellant changed his plea, and the fact that the court could not guarantee what penalty it would impose if he pleaded guilty. Further, testimony of appellant's counsel at the PCHA hearing indicated that counsel was aware of appellant's limited abilities, but believed that appellant understood the available alternatives, which were all explained to him. Counsel also testified that appellant was told of the Commonwealth's agreement to not press for the death penalty if appellant entered pleas of guilty. Counsel stated that while the alternatives were all placed before appellant for his choice, counsel told appellant that the chances of avoiding the death penalty were better if he pleaded guilty and went before the judge with the Commonwealth not recommending the death penalty.

This evidence certainly supports the hearing court's finding that there was a plea bargain which appellant knew about, and that appellant knowingly entered his pleas with the purpose of avoiding the death penalty. See *Commonwealth ex rel. Kerekes v. Maroney*, 423 Pa. 337, 223 A. 2d 699 (1966); cf. *Commonwealth v. Servey*, 434 Pa. 433, 256 A. 2d 469 (1969). Accordingly we must sustain the hearing court's factual determination that appellant's pleas were entered knowingly and intelligently.

The second error assigned by appellant is the trial court's determination that appellant committed first degree murder.[3] The evidence produced at trial indicates that on the day of November 27, 1962, appellant

---

[3] While this issue may normally only be raised on a direct appeal, see *Commonwealth v. Zaffina*, 432 Pa. 435, 248 A. 2d 5 (1968),

purchased a knapsack and groceries, and, under an assumed name, a rifle and bullets. That evening, with his rifle loaded, appellant went to decedents' home. He entered, shot Yeager and Batdorf, hit the housekeeper with the butt of his rifle, and fled. Approximately one month after the shooting he surrendered himself to the police in Baltimore, Maryland.

Appellant claims that the two killings were not intentional. He testified that his mission was to convince Yeager to drop criminal charges which Yeager had lodged against appellant. He purchased the rifle merely to help "persuade" Yeager, not to murder him. Realizing that he would be "doing wrong" by even going to see Yeager, he purchased supplies to enable him to hide out in the mountains until everything "blew over." As evidence of his lack of premeditation, the defense also attempted to show that Yeager was clearly visible to appellant from outside the house; if appellant had desired to kill Yeager, he could have done so without entering. Additionally, appellant testified that he did not know why he loaded the gun before going into the house, that he did not recall cocking the gun before shooting Batdorf, and that both homicides resulted from struggles over the rifle.

The trial court specifically found that appellant's story was not credible and that he had gone to the house intending to kill Yeager. In addition the court found that while appellant did not enter the premises intending to kill Batdorf, appellant's actions in cocking the rifle, pointing it at Batdorf, and shooting him, were sufficient to prove first degree murder. Accord: *Commonwealth v. Winebrenner*, 439 Pa. 73, 265 A. 2d 108 (1970) (citing cases). The issue of credibility be-

---

the hearing court expressly requested appellate review of its determination, and the Commonwealth has not objected to appellant raising this issue for review now.

ing one for the trier of fact, and there being sufficient evidence from which the trier of fact could find first degree murder, the decision must be affirmed.

The order of the Court of Common Pleas, Criminal Division, of Berks County is affirmed.