Commonwealth *v.* Miller, Appellant.

Argued April 30, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*John W. Packel,* Assistant Defender, with him *Kenneth Mirsky* and *Jonathan Miller,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *Maxine J. Stotland,* Assistant District Attorney,

*Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, October 3, 1973:

On February 4, 1949, the appellant, Charles C. Miller, pleaded guilty to murder generally, for the shooting death of Arthur James Ruth on the evening of October 16, 1948. The record is silent concerning the circumstances surrounding that plea. After a degree of guilt hearing before a three judge court, appellant was found guilty of first degree murder and was sentenced to life imprisonment. At the time of his plea and throughout the proceedings, Miller was represented by court-appointed counsel. No direct appeal was taken from the judgment of sentence.

On July 23, 1969, appellant filed a petition under the Post Conviction Hearing Act,[1] alleging, inter alia, that his guilty plea was not knowingly entered because he lacked sufficient mental capacity to make the decisions implicit in a knowing, intelligent and voluntary plea. After an evidentiary hearing, Miller was granted the right to file post-trial motions nunc pro tunc, but the PCHA petition was denied in all other respects. The motion for a new trial was argued and was denied, but the PCHA petition was ordered listed for a new evidentiary hearing because the judge presiding at the first hearing died without making any findings. On November 9, 1972, a second hearing was held and the petition was denied.

Because the same issues are raised in each instance, we have permitted appellant to consolidate this appeal from the denial of his PCHA petition and his appeal

_____

[1] Act of January 25, 1966, P. L. (1965) 1580, §5, *as amended,* 19 P.S. §1180-5 (Supp. 1973).

nunc pro tunc from the denial of post-trial motions. We affirm the lower court's determinations.

Appellant has testified that, due to his lack of intelligence, he did not understand the consequences of his guilty plea and that neither his attorneys nor the judge discussed the significance of that plea with him. He contends that the burden of proving his plea was knowing, intelligent and voluntary should rest with the Commonwealth where the record, as here, is silent.

In *Commonwealth ex rel. West v. Rundle*, 428 Pa. 102, 237 A. 2d 196 (1968), we held that henceforth in Pennsylvania an on-the-record examination of the defendant must be conducted to determine if the plea was knowingly, intelligently and voluntarily entered. *Boykin v. Alabama*, 395 U.S. 238 (1969) gave that mandate a "federal constitutional dimension." *See Commonwealth v. Brown*, 443 Pa. 21, 25, 275 A. 2d 332, 334 (1971). Later we held that in cases questioning guilty pleas based upon silent records and entered after January 3, 1968,[2] the burden of proof would shift from the appellant to the Commonwealth. *Commonwealth v. McBride*, 440 Pa. 81, 83, 269 A. 2d 737, 739 (1970) ; *Commonwealth v. Cushnie*, 433 Pa. 131, 135, 249 A. 2d 290, 293 (1969). Appellant requests that we fix the burden of proof of voluntariness in *pre-1968* silent record guilty pleas upon the Commonwealth. He relies on recent decisions involving silent records where *not guilty* pleas were entered.

In *Commonwealth v. Anderson*, 441 Pa. 483, 272 A. 2d 877 (1971), this Court determined that the appellant was denied his right to a meaningful appeal since there was no transcript of the proceedings below and the Commonwealth could not construct an equivalent picture of what transpired. *Anderson* was given retroac-

---

[2] January 3, 1968 was the date of this Court's decision in *Com. ex rel. West v. Rundle, supra.*

tive effect in *Commonwealth v. DeSimone,* 447 Pa. 380, 290 A. 2d 93 (1972).

Appellant argues that a defendant who enters a guilty plea in a pre-1968 silent record case is in a position similar to that of the defendant in *Anderson,* and that his appeal will likewise be meaningless without a record of the lower court proceedings. He contends, therefore, that the burden of proving the intelligence and voluntariness of a pre-1968 silent record guilty plea should lie with the Commonwealth, or alternatively that the Commonwealth should construct an equivalent picture of the proceedings below. We disagree.

By adopting appellant's argument we would be applying *Boykin* retroactively, a position we rejected in *Commonwealth v. Godfrey,* 434 Pa. 532, 536, 537, 254 A. 2d 923, 925 (1969) : "[I]t is staggering to the imagination to contemplate the chaos which would result if Boykin were applied retrospectively. The overwhelming majority of all convictions result from guilty pleas. In a great many of these cases, inadequate on-the-record examinations were conducted. This would mean that countless cases would have to be retried if Boykin were applied retrospectively. We can only underscore the statement of Mr. Justice STEWART in Teban v. Shott: 'To require all these States [which still permitted comment on the accused's failure to take the stand when Griffin was decided] now to void the conviction of every person who did not testify at his trial would have an impact upon the administration of their criminal law so devastating as to need no elaboration.' (382 U.S. at 419). We hold, therefore, that Boykin is to be applied only to cases tried after June 2, 1969." Our reasoning in *West, Cushnie, McBride* and *Godfrey, supra,* was not undermined by *Anderson* and *DeSimone. See Commonwealth v. Woolcutt,* 221 Pa. Superior Ct. 384, 387, 293 A. 2d 99, 100 (1972). In *Anderson* and *DeSimone,* we focused on the acute problems involved in attempting

to reconstruct errors which might have occurred during the course of trial without notes of testimony. To require a defendant to base his appeal upon unrecorded trial errors is so great a burden as to virtually preclude a meaningful appeal. Accordingly, this Court saw fit to grant retroactive application.[3] We cannot say, however, that placing the burden of proof on appellant in this silent record pre-1968 guilty plea situation would deny him a meaningful appeal. The record indicates that when he acquired counsel, appellant changed his plea from not guilty to guilty. The intelligence and voluntariness of this silent record guilty plea involves questions which are peculiarly within the knowledge of appellant and his counsel, and which can only be reconstructed by them.

From our examination of the record, we also agree with the findings of the hearing court that appellant has failed to carry his burden of proof on the issue of whether his plea was knowingly, intelligently and voluntarily entered.

Appellant contends that he lacked the sufficient mental capacity to make decisions implicit in a knowing, intelligent and voluntary plea according to the rule of *Commonwealth v. Harris,* 431 Pa. 114, 243 A. 2d 408 (1968). He supports his contention as follows: although he was seventeen years old at the time of his plea, he had the mental age of a twelve year old; his I.Q. was 75; he attended a school for retarded children; and he was characterized by one neuropsychiatrist as a "high grade moron" while another classified him as a "defective delinquent."[4]

---

[3] This writer and Justice POMEROY dissented from the majority opinion in *DeSimone, supra.*

[4] Doctors Nicholas G. Frignito and Winifred Bayard Stewart were employed by the Court of Quarter Sessions to examine appellant after a preliminary examination by a staff psychologist.

Low intelligence alone, however, is not sufficient to establish an unintelligent guilty plea. *See Commonwealth v. Sampson*, 445 Pa. 558, 285 A. 2d 480 (1971); *Commonwealth v. Timmons*, 440 Pa. 262, 269 A. 2d 677 (1970). The test governing the competency of an accused to plead guilty was set forth by this Court in *Commonwealth ex rel. Hilberry v. Maroney*, 424 Pa. 493, 495, 227 A. 2d 159, 160 (1967): "[T]he test to be applied in determining the legal sufficiency of his mental capacity to stand trial, or enter a plea at the time involved, is not the M'Naghten 'right or wrong' test, but rather his ability to comprehend his position as one accused of murder and to cooperate with his counsel in making a rational defense."

Charles Miller was not a stranger to the judicial system. Appellant testified at his PCHA hearing that he had entered a guilty plea in juvenile court to a charge of larceny two years before he entered his plea in this case. When questioned about his earlier plea he stated candidly that he pleaded guilty because he had committed the crime. The following colloquy from appellant's PCHA hearing indicates quite clearly that he also appreciated the significance of the subject plea: "Q. Well you knew that you could have pled not guilty though, didn't you? A. Yes. Q. And you pled guilty before? A. Right. Q. The only reason you pled guilty then was because the Sheriff said so?[5] A. Not the only reason I pleaded guilty. I shot the guy and the guy did die. And that's the reason I pleaded guilty. Q. You pleaded guilty because you knew you were admitting to these things? A. Yes. I pled guilty because I shot the guy. . . . Q. And you understood the charges at that time right?

---

[5] The appellant gave conflicting testimony concerning who advised him to plead guilty. At the first PCHA hearing, he testified that his attorneys advised him to plead guilty, but at the second PCHA hearing he testified that the Sheriff advised him to enter a guilty plea.

A. I understood I shot the guy and he died and that I was guilty. That's it."

From an examination of the record, we are impressed with appellant's ability to understand the nature and consequence of his actions and we cannot say that appellant lacked the mental capacity to comprehend his position or to assist his attorneys in preparing and offering a rational defense.[6] We conclude that the PCHA hearing judge correctly rejected appellant's contention that he was incompetent to plead guilty.

Appellant's final contention is that he should be afforded a new degree of guilt hearing because an involuntary confession[7] was admitted against him at his original hearing. We disagree. In PCHA hearing testimony, appellant has consistently stated that his confession was true, accurate and voluntary. Where a confession is the product of a free and unconstrained choice by its maker, its use against him is not constitutionally infirm. *Culombe v. Connecticut,* 367 U.S. 568 (1961) ; *Commonwealth v. Hallowell,* 444 Pa. 221, 225, 226, 282 A. 2d 327, 329 (1971).

Order affirmed.

Mr. Justice ROBERTS, Mr. Justice NIX and Mr. Justice MANDERINO concur in the result.

---

[6] Appellant has advanced the argument that he was unaware that self defense might have constituted a defense to the murder charge. The record, however, clearly indicates that there is no merit to his claim of self defense. Three eyewitnesses testified at the degree of guilt hearing that the shooting was unprovoked.

[7] In this confession, appellant admitted that he had shot and killed the decedent, Arthur James Ruth.