351 A.2d 221
**COMMONWEALTH of Pennsylvania**
v.
**Carl MELTON, Appellant.**

Supreme Court of Pennsylvania.

Submitted Nov. 27, 1974.

Decided Jan. 29, 1976.

530

Louis M. Natali, Jr., Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Mark Sendrow, Asst. Dist. Atty., Asst. Chief, Appeals Div., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

This is an appeal from the order of the court below entered after an evidentiary hearing denying appellant relief [1] under the Post Conviction Hearing Act ("P.C.H.A.").[2] The hearing was held pursuant to our decision of November 17, 1972, wherein we reversed the order of the trial court dismissing appellant's P.C.H.A. petition without a hearing. 449 Pa. 223, 296 A.2d 727 (1972).[3]

1. While the court denied appellant's claims it also ordered the vacation of the death penalty and imposition of life imprisonment in light of the decision of the Supreme Court of the United States in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). That part of the order has not been appealed.

2. Act of January 25, 1966, P.L. (1965) 1580, § 1 *et seq.*, 19 P.S. § 1180–1 *et seq.* (Supp.1975–76). Although this appeal was submitted to this Court on briefs of the parties on November 27, 1974, the record of the proceedings under the Post Conviction Hearing Act was not filed until a year later, November 10, 1975.

3. We there held that Melton had not waived his right to have considered under the provisions of the P.C.H.A. issues which he could have but did not raise on his direct appeal, 406 Pa. 343, 178 A.2d 728 (1962), *cert. denied,* 371 U.S. 851, 83 S.Ct. 93, 9 L.Ed.2d 87 (1962), or on habeas corpus, *U. S. ex rel. Melton v. Hendrick,* 218 F.Supp. 293 (E.D.Pa.1963), *affirmed,* 330 F.2d 263 (3d Cir.

This case arose from the killing of one Rose Schloss during the course of a robbery at her home on December 13, 1958 perpetrated by Melton and a co-defendant. Appellant was brought to trial before a jury and was convicted of murder in the first degree. Sentence was set at death. Melton's motion for a new trial was granted by the court of common pleas and the Commonwealth's appeal from the new trial order was dismissed. 402 Pa. 628, 168 A.2d 328 (1961). On retrial the appellant pleaded guilty to murder generally and after a degree of guilt hearing the court en banc determined that the killing rose to murder in the first degree and the death penalty was again imposed. Appellant thereupon exhausted his direct appeal and habeas corpus remedies. The instant proceeding under the P.C.H.A. followed.

In this collateral attack on the judgment against him, Melton raised three issues, all relating to whether his guilty plea was valid. The same issues are pressed on appeal. First, Melton claims that he lacked sufficient mental capacity to make an intelligent guilty plea; second, he alleges that his guilty plea was primarily motivated by an involuntary confession; and third, appellant maintains that his guilty plea was induced by his fear that the death penalty would be imposed upon him if he chose to be tried by a jury because of the allegedly unconstitutional jury selection procedure prevailing at the time of the entry of the plea. After careful consider-

1964). Our rationale for holding inapplicable the waiver provisions of the P.C.H.A., Act of January 25, 1966, P.L. (1965) 1580, § 4, 19 P.S. § 1180-4, was based on the fact that both appellant's direct appeal and his petition for habeas corpus antedated the adoption of the P.C.H.A., March 1, 1966. We noted that before the effective date of that Act the failure to raise a claim involving a constitutional issue on direct appeal did not constitute a bar to consideration of that issue on habeas corpus because there was no waiver doctrine either by statute or by case law. 449 Pa. at 226, 296 A.2d at 729. We thus declined to apply the waiver provisions of the P.C.H.A. retroactively to bar consideration of claims on P.C.H.A. which could have been raised in direct appeals filed prior to the Act's effective date. 449 Pa. at 227, 296 A.2d at 729.

534

ation, we have concluded that all of these arguments are without merit.

■ (1) Appellant's first argument is premised to a large degree on our decision in *Commonwealth v. Harris*, 431 Pa. 114, 243 A.2d 408 (1968), in which we invalidated a guilty plea entered by a defendant with an I.Q. of 49 and a mental age of 8, who lacked the ability " 'to think intellectually in any decree' ". 431 Pa. at 118, 243 A.2d at 410. Melton claims that, because there was evidence that his own I.Q. was approximately 69 and that he too had the mentality of an 8 or 9 year old, his guilty plea, like that of Harris, must be considered a nullity. Appellant misreads our holding in *Harris*. We did not there establish a *per se* rule invalidating every guilty plea made by a defendant who was in some way mentally deficient. Instead, we reiterated that " '[t]he test to be applied in determining the legal sufficiency of [a defendant's] mental capacity to stand trial, or enter a plea at the time involved, is not the *M'Naghten* "right or wrong" test, but rather *his ability to comprehend his position as one accused of murder and to cooperate with his counsel in making a rational defense.' "  431 Pa. at 116–17, 243 A.2d at 409. (emphasis added). See also *Commonwealth v. Marshall*, 454 Pa. 413, 312 A.2d 6 (1973); *Commonwealth v. Miller*, 454 Pa. 67, 309 A.2d 705 (1973).

■ Under this standard, there is no doubt of appellant's ability to enter an intelligent guilty plea. Unlike the record in *Harris*, there is nothing here to establish that Melton lacked the "ability 'to think intellectually in any degree.' "  Indeed, the evidence is to the contrary. At the degree of guilt hearing following appellant's plea, Dr. John G. Torney, a court-appointed psychiatrist, testified that appellant was mentally competent. At the P. C.H.A. hearing, appellant's counsel at the time of the entry of the plea, James McCort, Esq., testified that none of the doctors who had examined Melton had concluded

that he was incompetent to stand trial or discuss the case with his attorneys. Furthermore, Mr. McCort testified that, observing the defendant testify at his first trial, McCort was struck by the fact that "that man was the most articulate 69 I.Q. man that I heard on the witness stand." He was so impressed by Melton's articulateness that he added, "when he got on the stand to testify so help me God I thought it [sic] was a Harvard graduate." Such an appraisal by the appellant's own trial lawyer directly refutes appellant's present claim of incompetence. We cannot say that the hearing judge abused his discretion in not crediting that claim.

■■ (2) Appellant next asserts that his guilty plea was primarily motivated by the existence of a confession which had been obtained from him illegally. In *Commonwealth v. Marsh*, 440 Pa. 590, 271 A.2d 481 (1970), we adopted a tripartite test for determining when a guilty plea could be invalidated on that ground: (1) an involuntary pretrial confession; (2) a guilty plea primarily motivated by that confession, and (3) a showing that, under the circumstances, the advice given to the defendant by his lawyer that he plead guilty was incompetent. See also *Commonwealth v. Zakrzewski*, 460 Pa. 528, 333 A.2d 898 (1975); *Commonwealth v. Marsh*, 460 Pa. 253, 333 A.2d 181 (1975); *Commonwealth v. Williams*, 456 Pa. 377, 321 A.2d 608 (1974); *Commonwealth v. Velez*, 455 Pa. 434, 317 A.2d 252 (1974); *Commonwealth v. Tolbert*, 450 Pa. 149, 299 A.2d 252 (1973); *Commonwealth v. Hollenbaugh*, 449 Pa. 6, 295 A.2d 78 (1972); *Commonwealth v. Taylor*, 449 Pa. 345, 296 A.2d 823 (1972). In the present case the P.C.H.A. court, following the evidentiary hearing, concluded that "[t]he defendant has failed utterly to establish any of these criteria." Because we have decided that appellant has failed to establish that his confession was in fact involuntary, we need not consider whether the other criteria have been met.

■ Appellant's allegation that his confession was involuntary rests primarily upon two factors which he claims to have been present: (1) his mental deficiency and (2) the fact that he was not informed prior to confessing that a victim of the robbery and assault had died. In determining whether a confession is voluntary or not where, as here, we do not have the benefit of any findings of fact by the court below [4] we are to make our own independent review of the record. In doing so, "[w]e consider only the uncontested portions of the record: the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted." *Culombe v. Connecticut*, 367 U.S. 568, 604, 81 S.Ct. 1860, 1880, 6 L.Ed.2d 1037, 1058 (1961). See also *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968). Viewed with these requirements in mind, the evidence fails to demonstrate that the confession was involuntary.

■ Like his assertion of lack of mental capacity to enter an intelligent guilty plea, appellant's allegation of mental deficiency so great as to prevent him from understanding what he was doing when he confessed is plainly without merit. There is no evidence that Melton was any less competent at the time he confessed than when he elected to plead guilty. A low I.Q. alone is insufficient to establish involuntariness in either situation. See *Commonwealth v. Scoggins*, 451 Pa. 472, 304 A.2d 102 (1973); *Commonwealth v. Daniels*, 451 Pa. 163, 301 A.2d 841 (1973); *Commonwealth v. Abrams*, 443 Pa.

---

**4.** The findings of fact which ordinarily are made following a pretrial suppression hearing as required by Rule 323(i) of the Pennsylvania Rules of Criminal Procedure were not made in this case because both appellant's first trial and subsequent guilty plea occurred prior to the adoption of Rule 323. The P.C.H.A. court, in its opinion denying appellant relief, also failed to make any specific findings of fact concerning the voluntariness of the confession.

295, 278 A.2d 902 (1971); *Commonwealth v. Darden*, 441 Pa. 41, 271 A.2d 257 (1970). Furthermore, there was considerable positive evidence of intelligence and capacity to understand: Melton had completed the ninth grade in school; had been admitted to the Marine Corps on his first application and had spent over a year in military service; and following the murder and robbery had attempted to cheat his accomplice out of a share of the loot by secreting it in his sock.[5]

■ Melton's other argument as to why his confession was not voluntary is that he did not know, when he confessed to his participation in the robbery, that a killing had occurred during its course. Whatever may have been the effect of this ignorance if it were established, see *e. g., Collins v. Brierly,* 492 F.2d 735 (3d Cir. 1974), the evidence is that Melton was in fact advised, before confessing, that one of the robbery victims had died.

■ In sum, we find nothing in the record to show that appellant's will was overborne or that he lacked the ability to understand what he was doing when he confessed. There is no uncontradicted evidence of any coercion, either physical or psychological. Indeed, appellant's own lawyer, Mr. McCort, testified that Melton had never made the claim to him that the confession was unknowing or had been involuntarily extracted.

(3) Appellant's final argument in support of his claim that his guilty plea should be vacated and that he should be awarded a new trial is that the plea was induced by a fear that the death penalty would be imposed if he were

---

5. In a somewhat related argument, appellant contends that he was intoxicated at the time of the giving of the confession and for that reason didn't know what he was doing. His own attorney, however, testified at the evidentiary hearing that a physical examination made within 4 or 5 hours of his arrest showed no evidence of intoxication. The interrogating officer, Detective Smith, corroborated this testimony.

to plead not guilty and be tried and convicted by a jury.[6] He alleges that he was forced to choose between pleading guilty and going to trial with a jury which was unconstitutionally constituted and, in consequence, conviction-prone. This choice of the "rock [or] the whirlpool," see *Frost v. Railroad Commission*, 271 U.S. 583, 593, 46 S.Ct. 605, 70 L.Ed. 1101, 1104, (1926) came about, argues appellant, because prospective jurors were excused for cause on voir dire who expressed merely "conscientious or religious scruples" concerning imposition of the death penalty—a practice later disapproved in *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Thus the argument goes, appellant's Fifth Amendment right to plead not guilty was sacrificed due to a denial of his Sixth Amendment right to a trial by jury. *U. S. v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). In *Jackson*, the Court invalidated the provision of the Federal Kidnapping Act, 18 U.S.C. § 1201(a), which had permitted the death penalty to be imposed upon a defendant convicted of violating the act only "if the verdict of the jury shall so recommend." There was no provision for its imposition if the defendant pleaded guilty or requested a trial before a judge. Such a selective provision, the Court held, had the effect of "needlessly chill[ing] basic constitutional rights." 390 U.S. at 582, 88 S.Ct. at 1216, 20 L.Ed.2d at 147.

■ Assuming, but without deciding, that appellant is correct, *i. e.*, that the jury selection procedure in effect at the time of his guilty plea was constitutionally infirm

---

**6.** It is to be noted that this argument is inconsistent with appellant's second argument, *supra*, that the plea was motivated by an involuntary confession. It is also inconsistent with Melton's own testimony at the P.C.H.A. hearing, in which he stated that he actually wanted a jury trial because he believed that he could obtain greater leniency from a jury. This belief apparently was grounded in the fact that it was Melton's codefendant, not he, who was the actual killer.

under *Witherspoon,* he is not entitled to the invalidation of his guilty plea for that reason alone. Our law is clear that the mere fact that a guilty plea is motivated by the defendant's apprehension that the death penalty is more likely to be imposed following a jury trial than following a guilty plea is insufficient to vitiate that plea. *Commonwealth v. Reagan,* 447 Pa. 186, 290 A.2d 241 (1972); *Commonwealth v. Henderson,* 441 Pa. 255, 272 A.2d 182 (1971); *Commonwealth v. Hargrove,* 434 Pa. 393, 254 A.2d 22 (1969). The alleged fact that such a likelihood has its origin in a jury selection procedure subsequently found unconstitutional does not require a different result.[7]

That *U. S. v. Jackson, supra,* is entitled to no broader reading is evident from the Supreme Court's decision in *Brady v. U. S.,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The Court there declined to order the vacation of a guilty plea shown to have been induced by fear of the jury-imposed death penalty permitted under the provision of the Federal Kidnapping Act and found unconstitutional in *Jackson.* The Court stressed that *Jackson* "neither fashioned a new standard for judging the validity of guilty pleas nor mandated a new application of the test theretofore fashioned by courts and since reiterated that guilty pleas are valid if both 'voluntary' and 'intelligent.'" 397 U.S. at 747, 90 S.Ct. at 1468, 25 L.Ed.2d at 756. Again, in *North Carolina v.*

7. In numerous cases, we have rejected appeals for new trials made by defendants who claimed that they were tried by juries which were selected in a manner prohibited by *Witherspoon.* We have held that non-compliance with *Witherspoon* was irrelevant in light of the decision of the Supreme Court of the United States in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), holding unconstitutional the imposition of the death penalty under statutes such as the one in effect at the time of Melton's plea. See and compare *Commonwealth v. Martin,* 465 Pa. 134, 348 A.2d 391 (1975); *Commonwealth v. Dukes,* 460 Pa. 180, 331 A.2d 478 (1975) and cases cited therein.

540

*Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), the Court said:

"That [a defendant] would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, expecially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage."

We believe the present case to be controlled by these decisions. Appellant has failed to demonstrate that his confession was not voluntary and intelligent; the mere fact that he alleges that it was induced by fear of the imposition of the death penalty by a supposedly "hanging jury" is, by itself, insufficient to vitiate the plea.

Order affirmed.

ROBERTS, J., filed a dissenting opinion in which NIX and MANDERINO, JJ., join.

ROBERTS, Justice (dissenting).

I dissent. As the majority states "The P.C.H.A. court, in its opinion denying appellant relief, . . . failed to make any specific findings of fact concerning the voluntariness of the confession." Section 10 of the Post Conviction Hearing Act states "The order finally disposing of the petition shall state grounds on which the case was determined . . . ." Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, § 10, 19 P.S. § 1180–10 (Supp.1975). I would remand the case to the PCHA court for the specific findings of fact which are necessary to an informed appellate review.

NIX and MANDERINO, JJ., join in this dissenting opinion.