Commonwealth *v.* Wright, Appellant.

Argued April 29, 1971. Before EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Dennis R. Suplee,* with him *Schnader, Harrison, Segal & Lewis,* for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *Richard Max Bockol,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 12, 1971:

The appellant, Walter Lee Wright, was convicted by a jury of murder in the first degree, and the punish-

ment was fixed at life imprisonment. After sentence was imposed by the court, as the jury directed, an appeal was filed in this Court. We subsequently reversed the judgment and awarded a new trial because of certain trial errors. See 415 Pa. 55, 202 A. 2d 79 (1964).

When Wright was called for retrial, he entered with the advice of counsel a general plea of guilty to the murder indictment. After an evidentiary hearing the court found him guilty of murder in the second degree and imposed a sentence of imprisonment of 9 to 20 years.[1] No appeal was entered.

Wright later filed a petition seeking post-conviction relief, alleging, inter alia, that the guilty plea was not knowingly and intelligently entered. After an evidentiary hearing, the petition was dismissed and this appeal is from that order.

Wright having been once convicted of murder in the first degree and sentenced to life imprisonment, it was constitutionally impermissible to place him in jeopardy of a death sentence on retrial. *Commonwealth v. Littlejohn,* 433 Pa. 336, 250 A. 2d 811 (1969).[2] Nevertheless, the record of the plea proceedings shows that before Wright entered the guilty plea, he was told by the trial judge that if he plead "not guilty" and elected to stand trial before a jury, it was possible for the jury to find him guilty of murder in the first degree and to fix the penalty at death. To illustrate this the judge cited two instances from memory where the jury had fixed the punishment at death at the second

---

[1] At the time the guilty plea was entered, the district attorney certified to the court that guilt was no higher than second degree murder and recommended a sentence of 7½ to 20 years imprisonment.

[2] Cf. also *Green v. United States,* 355 U.S. 184, 78 S. Ct. 221 (1957).

trial and one of the defendants had been executed. The record also discloses that at the post-conviction hearing below, Wright testified without contradiction that one of two court-appointed trial counsel gave him the same erroneous advice, and that his fear of the death penalty influenced his guilty plea. Additionally, the testimony of his chief trial counsel at the post-conviction hearing, while evasive in material part, is persuasive that when he discussed with Wright the advisability of pleading guilty he was mistakenly of the opinion that Wright was in jeopardy of a death sentence if he elected to be tried by a jury at the second trial and that he so told Wright, albeit he also told him such a possibility was not likely. In view of this record, the court below erred in concluding the guilty plea was knowingly and intelligently entered.

To render an intelligent and knowing decision with respect to a choice between pleading guilty and standing trial, reason dictates that the one making the choice be aware of what each possibility entails. If he is not, his choice can hardly be said to be "intelligent." And, this is particularly so where if one choice is made, it involves waiving valuable rights guaranteed by the United States Constitution, such as the right against self-incrimination (Fifth Amendment), and the right to demand a jury trial (Sixth Amendment). Herein, Wright was deprived of properly evaluating and asserting these rights by a false understanding inspired by erroneous advice received both from his trial counsel and the court.

In relative instances, it has been held that a guilty plea is not intelligently and knowingly entered unless the accused is aware of the consequences thereof, including the possible punishment. Cf. *McCarthy v. United States*, 394 U.S. 459, 89 S. Ct. 1166 (1969), and

*Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 237 A. 2d 196 (1968).

The court below, while recognizing that Wright had been given erroneous advice before pleading guilty, concluded that "the question of a possible death penalty played very little, if any, part in the defendant's decision to plead guilty." This conclusion was based on the fact that prior to the second trial, defense counsel and the district attorney's office entered into a "plea bargain", i.e., that if a guilty plea were entered, the district attorney would certify Wright's guilt rose no higher than second degree murder and recommend to the court that a sentence of imprisonment for a term of 7½ to 20 years be imposed, and that Wright knew of and accepted this arrangement. But the fact remains that when Wright decided to accept this plan, he was under the mistaken belief that if he rejected it a death sentence was at least possible. His decision, therefore, was made "in the dark."

The court below in denying relief also relied on *Parker v. North Carolina,* 397 U.S. 790, 90 S. Ct. 1458 (1970), and *Brady v. United States,* 397 U.S. 742, 90 S. Ct. 1463 (1970), which ruled that the voluntariness of a guilty plea is not negated merely because it is motivated by a desire on the part of the defendant to induce a sentence less than that legally possible. These decisions do not control the instant situation. First, different questions, are involved where the court is faced with determining the voluntariness of a guilty plea, as distinguished from whether or not such a plea is knowingly and intelligently entered. Secondly, in *Parker* and *Brady,* where it was alleged that the guilty plea was involuntary because it was induced by a fear of the death penalty, a sentence of death was legally possible, and in neither instance was the defendant misled as to the possible consequences of standing trial.

Order reversed and record remanded with directions to proceed consonant with this opinion.

Mr. Chief Justice BELL and Mr. Justice JONES took no part in the consideration or decision of this case.