## Commonwealth *v.* Carey, Appellant.

Argued September 9, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Barnett S. Lotstein,* with him *Seidman and Lotstein,* for appellant.

*Mark Sendrow,* Assistant District Attorney, with him *Larry D. Feldman* and *Steven H. Goldblatt,* Assistant

District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., June 24, 1975:

Appellant contends that he did not voluntarily waive his right to a jury trial, and that he is therefore entitled to a new trial.

Appellant and a co-defendant were charged with burglary with intent to commit a felony, unlawfully resisting arrest, and assault and battery. The assistant district attorney agreed with appellant's counsel that he would recommend probation if appellant would plead guilty, and appellant on the advice of counsel accepted this plea bargain. However, when on September 4, 1969, appellant appeared for trial before Judge DiBONA, this bargain was rejected (the record is at odds whether this rejection was by the judge or the assistant district attorney), and the case was listed for trial before Judge (now Mr. Justice) NIX. On October 1, 1969, a pre-trial conference was held between Judge NIX, the assistant district attorney, appellant's counsel, and counsel for the co-defendant. During the conference, the judge was told about the failure of the previously arranged guilty plea. There was also some discussion of the facts of the case, and of appellant's prior record (that he had "done time"). Following the conference, appellant's counsel advised appellant that if he waived a jury trial, he would, if convicted, receive a sentence of no more than 6 to 23 months. (The facts regarding this advice will be more fully discussed below.) An on-the-record colloquy ensued between counsel and appellant, after which appellant waived a jury trial. He was found not guilty of unlawfully resisting arrest and assault and battery, but guilty of burglary with intent to commit a felony. The assistant district attorney recommended a sentence of 6 to 23 months.

However, Judge Nix refused the recommendation and sentenced appellant to 5 to 10 years. Appellant did not appeal this sentence but did file a petition under the Post Conviction Hearing Act, Act of Jan. 25, 1966, P.L. (1965) 1580, 19 P.S. §1180-1 (1974-75). A hearing was held and appellant was given leave to file post-trial motions *nunc pro tunc*. These motions were filed and denied, and this appeal followed.

Although the right to a jury trial in criminal cases is guaranteed both by the Sixth Amendment to the United States Constitution and by Article I, Section 9 of the Pennsylvania Constitution, it may nevertheless be voluntarily waived. *Commonwealth v. Kirkland,* 413 Pa. 48, 53, 195 A.2d 338, 340 (1963). However, in order for the waiver to be voluntary, it must be "an intentional relinquishment of a known right." *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938).; *Commonwealth v. Garrett,* 439 Pa. 58, 266 A.2d 82 (1970). For this standard to be met, a defendant must understand the nature and consequences of his waiver. *Commonwealth v. Wright,* 444 Pa. 588, 589, 282 A.2d 266, 267 (1971).

Thus it will be observed that the concept of "voluntary waiver" comprises two facts: understanding and will. Unless both of these facts are proved, there can be no finding of voluntary waiver. Understanding alone is not enough, for one may understand what he is doing but do it only in response to a threat. Neither, however, is will alone enough. One can willingly agree to waive a right, in the sense of acting freely and not in response to any threat, but if he does not understand the nature of the right he is waiving, and the consequences of waiving it, his waiver cannot be a "voluntary waiver." *Eisen v. Picard,* 452 F.2d 860 (1st Cir. 1971), *cert. denied* 406 U.S. 950 (1972) (defendant freely confessed; confession nevertheless excluded because at time of giving it defendant was mentally ill). This explains such cases as those requiring that a defendant be told that a jury consists of

twelve persons, whose verdict must be unanimous and in whose selection he may participate; otherwise he does not understand what a "jury" is. *Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597 (1973).

In a case such as the present case, which involves the effect on a defendant of his counsel's advice, it is important to keep the two facts of understanding and will distinct. This is so because one kind of advice must be given before a defendant can understand the nature of the right in question, and another kind before he can willingly give up that right. In the first instance, the advice will be general: *e.g.*, a statement explaining what a jury is. In the second instance, it will be particular, and will involve counsel's prediction in the case at hand with respect to such matters as the likelihood of a guilty verdict and the probable sentence.

Here, appellant does not contend that counsel did not advise him of, or that for some other reason he did not understand the nature of, his right to a jury trial. Rather, his contention is that instead of waiving that right willingly, he waived it only because his counsel assured him that if he did waive it, his sentence would be no more than 6 to 23 months.

In considering this contention, it must first be acknowledged that the opinion of the lower court does not respond to it. Thus the court states:

> "We find as a fact that no promises had been made by the district attorney or the court to defendant or his counsel that defendant would receive any particular sentence in return for a waiver of a jury trial. We, therefore, hold that defendant's waiver was knowingly, intelligently and voluntarily entered and that such a waiver was a valid one."

However, appellant does not claim that he waived his right to a jury trial because of any promise made to him by the district attorney or the court; he claims he did it because of a promise made to him by his counsel. In these

circumstances we have made our own examination of the record to determine whether it supports appellant's claim.

The first point to consider is whether counsel's advice was in some respect mistaken. If counsel's advice to waive is the result of a reasonable and well-considered assessment of the case, and if all of the necessary information is communicated to the defendant, *Commonwealth v. Wright, supra,* a waiver will not be disturbed. *Commonwealth v. Ward,* 442 Pa. 351, 275 A.2d 92 (1971). However, if the advice is based on inadequate or erroneous information, the waiver may be set aside. *Commonwealth v. Baldwin,* 219 Pa. Superior Ct. 153, 280 A.2d 654 (1971).

Here, counsel repeatedly testified at the post-conviction hearing that his advice to appellant was based on his impression from the pre-trial conference that the sentence would be no more than 6 to 23 months. The fact that this impression was erroneous is shown not only by the actual sentence, but by Judge NIX's testimony that no promise regarding the sentence was made.

The fact that counsel based his advice on an erroneous impression of what was said at the pre-trial conference is not sufficient, however, to warrant setting aside appellant's waiver of his right to a jury trial. The question remains whether counsel's error affected appellant's willingness to waive that right.

Since it is rather common for a disappointed defendant to claim that he was induced to waive a constitutional right because of some promise by his counsel, *cf. Commonwealth v. Alvarado,* 442 Pa. 516, 276 A.2d 526 (1971), it has been held that ordinarily no relief will be granted unless the defendant's testimony is "corroborated by some other source which is accepted as truthful." *Commonwealth v. Finney,* 433 Pa. 152, 155, 249 A.2d 286, 288 (1969). Thus, if defense counsel denies any inducement, and if no other corroborating evidence is produced, the waiver will be upheld. *Commonwealth v. But-*

*ler,* 446 Pa. 374, 288 A.2d 800 (1972) ; *Commonwealth v. Guthier,* 435 Pa. 353, 257 A.2d 586 (1969) ; *Commonwealth v. Simpson,* 434 Pa. 439, 254 A.2d 306 (1969). However, if there is the necessary corroboration, the waiver should be invalidated. *Commonwealth v. Finney, supra* at 155, 249 A.2d at 288.[1]

In *Commonwealth v. Finney, supra,* the defendant challenged his guilty plea as induced by his counsel's erroneous promise that the sentence would be 2 to 5 years ; in fact the sentence proved to be 5 to 25 years. No direct evidence of any inducement by counsel appeared on the record. However, in a colloquy one day after trial, counsel "stated positively that he communicated to the defendant the likelihood of a two and one-half to five year sentence. He further stated that such a communication resulted from a conversation among him [defense counsel], the Assistant District Attorney and the trial Judge." *Commonwealth v. Finney, supra* at 158, 249 A.2d at 290. This was held sufficient corroboration from an acceptable witness to show that the plea of guilty was not willing but had been induced by a promise of leniency from a trusted source, and a new trial was ordered.

The facts of the present case are even stronger in support of a new trial than were the facts in *Commonwealth v. Finney, supra.* Appellant testified at the PCHA hearing that he waived his right to a jury trial because his counsel "convinced me that I would receive six to

---

1. *And see Commonwealth v. Kirkland, supra.* In *Kirkland,* the trial judge painstakingly catechized the defendant to determine whether she personally knew what rights she was waiving, including the right to a jury trial, and was aware of the effect of her guilty plea. Her trial attorney's advice as to a possible sentence was found to be neither coercive nor definite. As no promise, relied upon by the defendant, had led to the waiver and plea, both were held valid. Both *Finney* and *Kirkland* involve the validity of a guilty plea. However, the standard for voluntariness of a guilty plea is the same as that for the waiver of a jury trial. *Commonwealth v. Garrett, supra.*

twenty-three months. . . . He shouted down my throat." Contradicting this statement is the on-the-record colloquy that was conducted before trial to determine voluntariness. During the colloquy, appellant answered "No" to the questions, "Have any promises been made to you?," and "Are you being forced to execute this waiver of a jury trial?" In testifying at the PCHA hearing, appellant's counsel indicated that he did not regard appellant's answers to those questions as untruthful, inasmuch as appellant may have understood the questions as referring to promises by the trial judge or assistant district attorney, not by his own counsel. Be that as it may, in the face of the colloquy, appellant's testimony that he had waived a jury trial because of a promise by his counsel would be insufficient to invalidate the waiver. However, appellant's testimony was corroborated by the testimony of appellant's counsel, and, in fact, more powerfully so than in *Commonwealth v. Finney, supra,* for counsel testified that he had "shoved [the waiver] down the defendant's throat, I say very frankly to this court, I led him to believe, I led him down the primrose path, that he wasn't going to get more than six months."

In addition to this there is other corroboration of appellant's testimony. Appellant testified that his case had been sent for trial to a non-jury room, and that he had at first told his counsel that he refused to go to trial because he wanted a jury trial. He went on to say that he had finally accepted his counsel's advice to waive a jury, and go to trial that day, because counsel "continuously" told him that 6 to 23 months "was all I was going to receive." He explained that counsel told him this after the pre-trial conference, and that "I was led to believe by him going into Judge's chambers, he came out, and he did tell me this is what I would receive." The fact of the pre-trial conference, and the assignment to a non-jury room, were corroborated by the testimony both of appellant's counsel and of the assistant district attorney who had

appeared for the Commonwealth at the trial. It is not necessary to consider the propriety of the pre-trial conference; the pertinence of it to the present discussion is not its propriety but that it occurred, for that occurrence corroborates appellant's testimony that he was induced to change his original plan to ask for a jury trial because in the circumstance it appeared to him that he could rely on counsel's assurances.

Finally, it is necessary to refer to the background against which appellant waived a jury trial, for the testimony with respect to that background corroborated not only appellant's testimony but also his counsel's. It will be recalled that at the first listing before Judge DiBona, a plea bargain for a recommendation of probation had been agreed upon. Appellant and his counsel in their testimony both attributed the rejection of this bargain to the presence in the courtroom of a large number of police officers. This testimony was corroborated by the assistant district attorney's testimony, which was as follows:

"Q. You hear Mr. Cary explain some of the events which led up to this trial, particularly in reference to what occurred before Judge DiBona.

Will you please tell us what you know about what occurred before Judge DiBona?

"A. The occurrence before Judge DiBona was brought to my attention by Mr. Leidner [appellant's counsel] and by Mr. Fitzpatrick who represented the codefendant.

I believe that the trial of this matter before Judge Nix was in the afternoon. I, at least, had some opportunity to get back to my office, the District Attorney's office, at that time, and check with the District Attorney who had handled the matter before Judge DiBona approximately one month before.

That District Attorney was Harvey Steinberg. Harvey Steinberg confirmed the fact that when Mr. Cary and the codefendant, Boganis, were before Judge DiBona that, in fact, a negotiated guilty plea had been

worked out and that Harvey Steinberg from the District Attorney's office was going to recommend probation.

Harvey Steinberg then informed me that on returning to the courtroom, there was a tremendous amount of police involved. There were, in this case, probably thirty police who made the arrest and most of them were in the courtroom.

It was before Judge DiBona. Then on communicating the outcome of the negotiated plea to the police, they did become very dissatisfied, and Mr. Steinberg in order to keep them off his back, so to speak, and in order to get out of what now seems to be a very trying situation, had the case continued. And I think the file was marked, 'Case continued, Commonwealth witness failed to appear.'

I believe the prosecuting witness, the doctor and his wife who were the owners of the property involved, were down the shore. And that was the reason that the case was continued. In the old case program, in room 243."

Given this background, it is not surprising that when the case was called before Judge Nix, appellant was wary of waiving any of his rights, and did so only after, in his counsel's words, the waiver was "shoved down [his] throat."

The order of the court below is reversed, and a new trial is granted.[2]

Cercone, J., dissents.

———

2. Appellant has also argued that the disclosure at the pre-trial conference of the prior negotiated guilty plea and of the fact that he had a criminal record violated his right to due process of law under the United States and Pennsylvania Constitutions; that his right to due process of law was also violated because the trial judge relied on misinformation as to appellant's prior record in determining his sentence; and, finally, that the evidence was insufficient to support a verdict of guilty. We do not reach these issues.

DISSENTING OPINION BY VAN DER VOORT, J.:

I must vigorously dissent.

In my opinion, the majority has reversed a conviction in a procedurally inappropriate manner. Further, even if our procedural rules would allow such a disposition, I don't believe such action could be substantively supported in the instant case.

First, our procedural rules make it clear that the issue relied upon by the majority is improperly before this Court on this appeal. The record shows that the appellant raised the argument of invalid jury waiver in an appeal pursuant to the Post Conviction Hearing Act, in which appeal he sought both to have his waiver of a jury trial declared invalid and the right to file post-trial motions *nunc pro tunc*.

After hearings, the lower court, in an opinion filed January 3, 1972, dismissed appellant's claim of invalidity of his waiver of the right to jury trial but granted the appellant the right to file post-trial motions *nunc pro tunc*. Although the appellant appealed that part of the lower court's action unfavorable to him, to our Court, he *abandoned* that appeal and sought a remand for the filing of post-trial motions, which remand was granted. This appeal arises from the denial of those post-trial motions. While the majority of our Court relies upon an allegedly invalid waiver of jury trial for reversal, that issue was never properly and timely raised on appeal. Further, the majority relies on testimony adduced at the PCHA hearing for its decision. Procedurally, it is completely inappropriate for this Court to review the 1972 Order of the PCHA court on which appeal rights were long ago waived and abondoned. It is clear that the appellant's tactical decision to pursue other remedies, and abandon his right to appeal the denial of post-conviction relief (relating to waiver of jury trial) precludes our consideration of such denials in the instant appeal. *Commonwealth v. Brittingham*, 442 Pa. 241, 275 A.2d 83 (1971).

While I believe that appellant is procedurally pre-
cluded from consideration of his claim of invalid waiver
of right to jury trial, I would not join the majority's vote
for reversal even if this argument were appropriately
before us in this appeal. The lower court, at the PCHA
hearing, dismissed appellant's argument on the basis of
a credibility determination and I see no abuse of discre-
tion in that regard by the hearing judge.

The trial record shows an extensive trial colloquy with
the appellant, by defense counsel, concerning the waiver
of jury trial, wherein the appellant testified under oath
that absolutely *no promises* had been made to him to
induce his waiver of a jury trial. He further denied he
was being forced to execute a waiver of jury trial. He
clearly understood the assertions of the trial judge that
he could receive a ten to twenty year sentence if con-
victed. If he perjured himself at that time (as he now
claims) defense counsel made no action to correct what
he said. Moreover, neither appellant nor his trial counsel
referred to any promises or understanding regarding
sentence at either the original sentencing or at a later
hearing for reconsideration of sentence.

At the PCHA hearing, the appellant testified his trial
counsel did not mention anything about the judge being
involved in the sentencing recommendation promised by
the District Attorney.[1] His testimony in this regard
*differed* from that of his trial counsel; the testimony of
the trial judge (now the Honorable Justice Robert C. Nix
of our Supreme Court) also differed from defense coun-
sel's concerning understandings as to sentence. The appel-
lant also testified at the PCHA hearing that his trial coun-
sel "didn't guarantee. He made a recommendation." This
falls far short of the coercive impact trial counsel testi-
fied he exerted on appellant to procure a waiver of jury
trial. On the basis of this extensive record I believe the

---

1. This promise was carried out by the attorney for the
Commonwealth after the appellant's conviction.

PCHA court was justified in finding the testimony of defendant, and even that of his trial counsel, unconvincing.[2] Such credibility determinations by the hearing court, absent a clear abuse of discretion, should not be the basis for reversal by an appellate court. *Commonwealth v. Riggins*, 452 Pa. 411, 305 A.2d 31 (1973).

I find the other claims of the appellant totally without merit and would therefore affirm.

WATKINS, P. J., joins in this dissenting opinion.

---

2. Determinations of credibility turn not only upon the assessment of truthfulness on the part of the witness, but also on the witness' recollection, responsiveness to questions and general demeanor. Comments concerning defense counsel's credibility should not be implied to indicate doubt as to his truthfulness. It is interesting to note that all of the witnesses, including Justice NIX had slightly differing recollections of the facts preceding and during the trial. Such differences must be expected in view of the long time period between the trial and the PCHA hearing.