380 A.2d 330

**COMMONWEALTH of Pennsylvania**

v.

**Lewis J. HARE, Jr., Appellant.**

Supreme Court of Pennsylvania.

Submitted May 23, 1977.

Decided Dec. 1, 1977.

236

John H. Chronister, Public Defender, York, for appellant.
Donald L. Reihart, Dist. Atty., York, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION

PACKEL, Justice.

The appellant contends that his request to withdraw his plea of guilty to murder should have been granted because

the plea was induced by the improper conduct of his attorney.* The appellant was accused of murder committed on June 9, 1974. He was indicted on July 15, 1974. He pled not guilty. His attorney, without success, made a whole series of pre-trial applications for: commitment as a mentally disabled person; suppression of evidence; reduction of bail; change of venue; habeas corpus; and striking the array of jurors.

On March 24, 1975, appellant's attorney had a conference with the district attorney, who stated that he planned to ask for the death penalty. The attorney discussed this with the appellant and his parents. The appellant was twenty years old, had gone to the ninth grade and was able to read and write. After several discussions in the morning and afternoon of that day, a plea bargain was entered into under which the district attorney would state to the court that the case did not call for the death penalty and the appellant would plead guilty. The district attorney did make the statement to the court and, after an extensive and thorough colloquy, the appellant pled guilty. He was subsequently found to be guilty of murder in the first degree and was sentenced to life imprisonment.

The appellant admittedly pled guilty to avoid the death penalty but claims that the improper counseling of his attorney induced the plea so that it was not made intelligently and willingly. He asserts that "he was stunned, his judgment impaired and his will overborne" by the conduct of his counsel on the day of trial.

Although the criminal procedural rules deal with the withdrawal of the plea of guilty only before trial, Pa.R.Crim.P. 320, the right under appropriate circumstances, even after sentencing, is implicit in the Sixth Amendment of the federal Constitution and in Article I, Section 9, of the Pennsylvania Constitution, under the guarantee of a right to a jury trial. Manifest injustice such as unfair conduct

* It is also contended that the judgment should be reversed because of the ineffective assistance of trial counsel. Appellate counsel relies solely on the conduct of trial counsel which is hereinafter dealt with.

leading to a guilty plea by active inducement, or by inaction when there is a duty to speak, is a valid ground for withdrawal of the plea. *Commonwealth v. Starr*, 450 Pa. 485, 301 A.2d 592 (1973); *Kelsey v. United States*, 484 F.2d 1198 (3d Cir. 1973). Inducement by fear of the death penalty or by the potential use of an invalid confession or other inadmissible evidence, does not give a defendant the right to withdraw a guilty plea unless counsel failed to give effective assistance. *Commonwealth v. Melton*, 465 Pa. 529, 351 A.2d 221 (1976); *Commonwealth ex rel. Henderson v. Maroney*, 448 Pa. 411, 293 A.2d 64 (1972), *cert. denied*, 409 U.S. 1117, 93 S.Ct. 922, 34 L.Ed.2d 701 (1973). In this appeal complaint is made, in the main, not of what trial counsel did, but of what he allegedly failed to do.

In the court below appellant's post-trial counsel filed a petition to withdraw the plea of guilty on the ground that the "plea of guilty was unlawfully induced by representations of his attorney which were either false or misleading." After hearing testimony on the petition, the court below refused to allow the withdrawal of the guilty plea, stating:

"In short, we conclude that the guilty plea was not induced by false or misleading representations of counsel but was a knowing and intelligent response to the risk involved."

In final analysis, the relief sought was based upon a claim of false or misleading representations and, hence, the issues should be reviewed from that standpoint.

Five claims are made. First, is the failure of counsel to discuss the possibility of the death penalty until the day of trial. Second, is the attorney's statement that unless the appellant pled guilty he *would* get the death penalty. Both of these points are negatived by an express finding of the court below, supported by the testimony at the hearing to change the plea, that the possibility of the death penalty had received prior discussion and that what counsel said was that the death penalty *could* be imposed.

Third, is the claim that the death penalty should not have been given consideration on a felony-murder basis because

robbery by the appellant took place after the killing. No representation on that issue was made by the attorney. He did say:

"I felt if the Commonwealth supported the opinion that apparently it does have, that the decedent was robbed of forty some dollars or something of that sort, that if the Commonwealth led it's [sic] case on that, that this crime was committed with that purpose in mind, that there was the very real possibility that that would be considered as an aggravated circumstance and would be sufficient to bring in a death penalty."

Such a view is not unreasonable in light of *Commonwealth v. Butcher*, 451 Pa. 359, 304 A.2d 150 (1973), and *Commonwealth v. Martin*, 465 Pa. 134, 348 A.2d 391 (1975).

■ Fourth, is the alleged failure of counsel to advise the appellant that age and maturity are mitigating circumstances which a jury may take into account in deciding whether or not to impose a death sentence. Again there was no misrepresentation on this score. The attorney testified that he did not recall discussing this but that he had given it thought, including the full-grown age and the reasonable education of the defendant. It cannot be said that it is a manifest injustice to warrant a withdrawal of a guilty plea because counsel has not discussed a conceivably possible mitigation factor with respect to the punishment for the crime. This follows, *a fortiori*, from the defendant's expressed attitude that, "The only thing I had on my mind was the death sentence and I would have, and I still will, say anything to beat the death sentence." This is not a case of reliance upon misinformation with respect to the punishment, as was true in *Commonwealth v. Wright*, 444 Pa. 588, 591, 282 A.2d 266, 267 (1971), where the guilty plea resulted from "erroneous advice received both from his trial counsel and the court."

■ Fifth, it is claimed that appellant's counsel was improperly influenced in recommending the guilty plea because of the inadmissibility of evidence which the court had ruled would be admissible. The evidence was that the appellant

had cut off the head and hands of the dead victim and had thrown the torso into a river to avoid identification. It is agreed that this gory story would have a great impact on the jury but it was in fact the gory acts of the appellant to which he had confessed. In any event, there was no incompetence of the lawyer in giving consideration to this pretrial ruling of the judge.

A troublesome factor which does not appear in appellant's brief but is shown by the record of the hearing on the withdrawal of the guilty plea is the following testimony of appellant's trial counsel:

> "Let me say this, I did not say to him what the Governor's position was with regard to a death sentence, because there is never any certainty of who the Governor will be at the time the sentence will be imposed. I think that might have been very unfair and very dangerous, as a matter of fact."

If counsel meant it would be very unfair and very dangerous to inform appellant of this information in that it might induce appellant not to follow counsel's advice, it might well be that this was a violation of ABA Standards, The Defense Function 5.1(b) (1974): "It is unprofessional conduct for a lawyer intentionally to understate or overstate the risk, hazards or prospects of the case to exert undue influence on the accused's decision as to his plea." The quoted statement, however, more likely means that it would be very unfair and very dangerous to rely on this possibility because of the uncertainty as to who the Governor might be at the significant time.

There is no evidence indicative of any probability that the appellant would have refrained from changing his plea if there had been the disclosure of any additional information. Nor has there been any nondisclosure of such a serious nature as would warrant a *per se* conclusion of inducement. The record and particularly the colloquy at the time of the plea reveal a thorough and conscientious attempt by the court, counsel and the district attorney to make sure that the plea was intelligent and with full understanding.

■ A plea bargain which has been fully carried out in accordance with its terms should not be set aside in the absence of convincing evidence that the appellant was dealt with indecently or unfairly.

Judgment affirmed.

EAGEN, C. J., and POMEROY, O'BRIEN and NIX, JJ., concur in the result.

ROBERTS and MANDERINO, JJ., filed dissenting opinions.

ROBERTS, Justice, dissenting.

Appellant should be allowed to withdraw his plea of guilty to murder because his trial counsel did not instruct him adequately as to the issues relevant to the possibility of receiving a penalty of death should he exercise his right to a trial by jury. The trial court found, and the majority does not dispute, that the primary motivation for appellant's guilty plea was his fear that he might be sentenced to death following a trial by jury. Appellant contends that this plea was not knowing and intelligent because his trial counsel failed to discuss either the weakness of the aggravating circumstance alleged by the Commonwealth or the existence of "age, lack of maturity, or youth of the defendant" [1] as a possible mitigating circumstance. Apparently conceding the factual validity of these claims, the opinion of Mr. Justice Packel nonetheless concludes that appellant's guilty plea was knowing and intelligent. This conclusion that competent advice on possible defenses to the imposition of the death penalty is unnecessary to establish a knowing and intelligent waiver of the right to trial by jury is entirely unjustified and contrary to our case law. I dissent.

On July 15, 1974, appellant was indicted for murder. The charge arose from the June 9, 1974, shooting death of Jesse Ingram. Appellant pled not guilty and trial by jury was set for March 24, 1975. On the day of trial, appellant's trial counsel had a conference with the district attorney who

1. 18 Pa.C.S.A. § 1311(d)(2)(i) (Supp.1977).

stated that he intended to seek the death penalty. At the noon recess, after jury selection had already begun, defense counsel advised the court that he had been discussing the possibility of a plea with appellant, appellant's parents, and the District Attorney.[2] Jury selection was delayed, and later that afternoon appellant entered a plea of guilty to murder generally, with the district attorney certifying that the evidence would not support a sentence of death. A degree of guilt hearing immediately followed and the next day the court entered its determination that appellant was guilty of murder of the first degree. No post-verdict motions were filed and appellant was sentenced to life imprisonment on April 14, 1975.

Defense counsel then took a direct appeal to this Court, despite having waived all issues other than sufficiency of the evidence by his failure to file post-verdict motions with the trial court. Trial counsel then withdrew and appellate counsel was appointed. Appellate counsel filed motions with the trial court for a new trial and for leave to withdraw appellant's plea of guilty. The appeal lodged with this Court was remanded to the trial court for consideration of these motions. After a hearing, the trial court denied appellant's petition to withdraw his guilty plea but held he was entitled to file motions in arrest of judgment and for a new trial. These were denied by the court en banc. This Court then reinstated appellant's appeal.

2. Appellant's trial counsel testified at the hearing on the motion to withdraw the plea that the decision to recommend a guilty plea was based upon the court's indication, made on the day of trial, that it would rule admissible at trial evidence that the victim's body was mutilated after the killing in an attempt to conceal the crime. Although this evidence would not establish an aggravating circumstance under 18 Pa.C.S.A. § 1311, trial counsel believed it would be so prejudicial that the jury would impose death under the felony-murder theory advanced by the Commonwealth.

The evidentiary ruling of the court should have been anticipated. Although the trial court believed the testimony of appellant's trial counsel, over that of appellant, that the possibility of a death penalty had been discussed earlier, it assumed that such discussion had been minimal prior to the day of trial. This assumption is supported by the timing of the plea agreement, entered into after the selection of jurors had already begun.

It is settled that "a guilty plea is a grave and solemn act to be accepted only with care and discernment . . . ." *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970). E. g., *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1973). Chief Justice Warren, writing for the Court in *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), discussed the nature of a guilty plea and the care with which it must be reviewed:

"A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, *it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.*"

394 U.S. at 466, 89 S.Ct. at 1171. (footnotes omitted) (emphasis added).

In *Brady v. United States*, supra, the Court recognized that "an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney . . . ." 397 U.S. at 748 n. 6, 90 S.Ct. at 1468 n. 6. In accordance with this principle, our cases recognize that a guilty plea cannot be truly knowing and intelligent if motivated by inaccurate advice of counsel. *Commonwealth v. Wright*, 444 Pa. 588, 282 A.2d 266 (1971); *Commonwealth ex rel. Smith v. Myers*, 438 Pa. 218, 261 A.2d 550 (1970); *Commonwealth v. Littlejohn* and *Commonwealth v. Archambault*, 433 Pa. 336, 250 A.2d 811 (1969) (companion

cases); *Commonwealth ex rel. Light v. Cavell,* 422 Pa. 215, 220 A.2d 883 (1966); *Commonwealth ex rel. Cunningham v. Maroney,* 421 Pa. 157, 218 A.2d 811 (1966).

The opinion of Mr. Justice Packel ignores these principles when it concludes that, although counsel failed to advise appellant on the merits of the Commonwealth's case in relation to the death penalty, or the existence of a possible defense to imposition of the death penalty, appellant could knowingly and intelligently waive all the constitutional rights abandoned by a plea of guilty. Appellant's trial counsel, in hastily arranging the plea entered into by appellant, [3] advised him of no more than that the prosecutor intended to seek the death penalty and that death was a possible sentence under the statute. Surely, in determining whether a plea is entered knowingly and intelligently, there can be little distinction between an unrepresented defendant or a defendant who receives erroneous advice from counsel and a defendant who, although represented by counsel, receives no advice on key factors relevant to a decision to enter a plea. In all these instances, the defendant is forced to make his decision " 'in the dark.' " *Commonwealth v. Wright, supra,* 444 Pa. at 592, 282 A.2d at 268. In none can it be concluded, consistent with our concern for the protection of constitutional rights, that the defendant "possess[ed] an understanding of the law in relation to the facts," *McCar-*

**3.** The majority's characterization of appellant's plea as part of a valid "plea bargain" is a generous description of the agreement arranged by appellant's trial counsel. In fact, appellant received no bargain. At the time appellant was tried there were no rules authorizing imposition of the death penalty after a bench trial or a plea of guilty. Hence, the agreement of the district attorney to certify that the evidence did not support imposition of the death sentence conferred no benefit on appellant.

Moreover, it does not appear that trial counsel ever advised appellant that he could waive trial by jury and be tried by the court without fear of the death penalty. See Pa.R.Crim.P. 1101. Nor does it appear that counsel ever advised appellant of the possibility of challenging the constitutionality of the death penalty statute in light of this circumstance, see *U. S. v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), or on any other grounds, see *Commonwealth v. Moody,* —— Pa. ——, 382 A.2d 442 (1977). However, appellate counsel does not assert any of these factors in his allegations of ineffective assistance of trial counsel.

*thy v. United States*, 394 U.S. at 466, 89 S.Ct. at 1171, when this most serious decision was made.

Appellant's trial counsel failed to advise him of the merits of the Commonwealth's claim that an "aggravating circumstance," essential to justify a sentence of death, existed in the case. The only evidence which the Commonwealth contended established an aggravating circumstance was some evidence that the victim's wallet was removed by the defendant before the body was concealed. Removal of the wallet, in the circumstances of this case, was as consistent with an intent to conceal the crime as with an intent to rob. While our cases state that, to establish a felony-murder, the Commonwealth need not establish that the intent to commit the robbery or other enumerated felony existed prior to the killing, the rationale of this rule is based on "the difficulty in attempting to ascertain when the intent to rob was conceived in a given factual situation." *Commonwealth v. Butcher*, 451 Pa. 359, 363, 304 A.2d 150, 152 (1973). The requirement nonetheless remains that the killing take place in the perpetration or attempt to perpetrate the felony. *Id.* When the evidence tends to show, as here,[4] that the killing was unconnected with any intent to rob, it is doubtful that a finding that the killing occurred in the perpetration or attempt to perpetrate a robbery could be sustained. Indeed, the trial court here concluded that the offense of felony-murder had not been established.

Appellant's trial counsel also failed to advise him that the death penalty could not be imposed if the jury found as a mitigating factor his "age, lack of maturity, or youth."[5] At the time of trial, appellant was twenty years of age and had a ninth grade education. Clearly, appellant had at least a colorable claim to mitigation on this basis.

The opinion of Mr. Justice Packel does not assert that trial counsel discussed these considerations with appellant. In refusing to permit appellant to withdraw his plea, the opin-

4. The record indicates that the motive for the killing was a long standing animosity between appelllant and the victim.

5. 18 Pa.C.S.A. § 1311(d)(2)(i) (Supp.1977).

ion of Mr. Justice Packel relies solely on its conclusion that trial counsel gave some consideration to these issues [6] and was not ineffective in recommending the guilty plea. These facts, however, do not establish that appellant's decision to plead guilty was knowing and intelligent. Although many trial decisions are properly the responsibility of counsel, the decision to plead guilty must be made personally by the defendant, to whom counsel has an obligation to explain the law in relation to the facts of the case in order that the defendant may personally weigh the risks of going to trial. *McCarthy v. United States,* supra.

The opinion of Mr. Justice Packel erroneously states that a counselled defendant may not withdraw a guilty plea absent a showing that counsel was ineffective. The decision to plead guilty, like the decision whether to waive the right to counsel, the right to a trial by jury, the right to testify on one's own behalf and the right to appeal, is personal to the defendant. See ABA Project on Minimum Standards for Criminal Justice, Standards Relating to the Prosecution and Defense Function, The Defense Function, § 5.2, at 237–38 (Approved Draft, 1971); Comment, Criminal Waiver: The Requirement of Personal Participation, Competence and Legitimate State Interest, 54 Calif.L.Rev. 1262 (1966). Mr. Chief Justice Burger recently pointed out the distinction which must be made in waiver analysis between decisions which are the responsibility of counsel and decisions personal to the accused:

"Although Noia, the habeas petitioner, was represented by counsel, he himself had to make the decision whether to appeal or not; the role of the attorney was limited to giving advice and counsel. . . . Because in both *Fay*

---

**6.** Trial counsel stated, with regard to the alleged aggravating circumstance, that if the Commonwealth supported its "opinion . . . that the decedent was robbed of forty some dollars or something of that sort" the death penalty would have been a "very real possibility." Concerning appellant's youth and lack of maturity as possible mitigating factors precluding imposition of the death penalty, the opinion of Mr. Justice Packel states that trial counsel was impressed by appellant's "full-grown age" (20 years) and "reasonable education" (ninth grade).

[*Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)] and *Zerbst* [*Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)], important rights hung in the balance of the *defendant's own decision,* the Court required that a waiver impairing such rights be a knowing and intelligent decision by the defendant himself."

*Wainwright v. Sykes,* 433 U.S. 72, 92, 97 S.Ct. 2497, 2509, 53 L.Ed.2d 594 (1977) (concurring opinion) (emphasis in original). Mr. Chief Justice Burger made clear that one of the decisions personal to the accused, requiring a knowing and intelligent waiver, is the decision to plead guilty. Id. at 93 n.1, 97 S.Ct. at 2510 n.1. Our cases are in accord with this standard. *Commonwealth v. Wright,* supra, is close on point to the facts of this case. Wright was convicted of first degree murder and sentenced to life imprisonment. On appeal, he was granted a new trial. Before retrial, however, Wright entered a plea of guilty, with the district attorney certifying that his guilt rose no higher than murder of the second degree. In an opinion by Mr. Chief Justice (then Justice) Eagen, we held that Wright's plea was not knowing and intelligent because he had been erroneously advised by counsel that if convicted of murder of the first degree he could receive a sentence of death. There was no finding that Wright's trial counsel, in recommending the plea bargain, was ineffective. No such finding can be implied, as it clearly appears that Wright received his advice prior to our decision in *Commonwealth v. Littlejohn* and *Commonwealth v. Archambault,* supra, which first held imposition of a death sentence on retrial, after a previous sentence of life, would be unconstitutional. Accord, *Commonwealth v. Littlejohn* and *Commonwealth v. Archambault,* supra (decision whether to appeal); *Commonwealth ex rel. Smith v. Myers,* supra (same).

Here, appellant's trial counsel advised him to enter a plea of guilty, but provided him with no counsel on the merits of the Commonwealth's allegation of an aggravating circumstance or the existence of a plainly possible mitigating circumstance which could preclude a sentence of death.

Whether or not trial counsel's advice constituted ineffective assistance of counsel, his failure to inform appellant of the law in relation to the facts of the case left appellant, like Wright, to make this important decision, personal to him, " 'in the dark.' " *Commonwealth v. Wright,* supra, 444 Pa. at 592, 282 A.2d at 268. In these circumstances, I cannot conclude that appellant's guilty plea was knowing and intelligent.[7] Accordingly, I would reverse appellant's judgment of sentence, allow appellant to withdraw his guilty plea, and grant him a new trial.

MANDERINO, Justice, dissenting.

The majority correctly states that a defendant can withdraw a guilty plea if, in the course of his decision to plead guilty, counsel failed to give effective assistance. *Commonwealth v. Melton,* 465 Pa. 529, 535, 351 A.2d 221, 224 (1976). The majority goes on to conclude it is not ineffectiveness for defense counsel to advise his client to plead guilty to avoid the death penalty without ever mentioning that the jury might have considered mitigating circumstances in deciding whether or not to impose a death sentence.

Appellant was twenty years old, with a ninth grade education, when he pleaded guilty to this crime. Age, youth, and lack of maturity are three specifically enumerated statutory mitigating circumstances. Even if we were to assume that the defendant would have pleaded guilty notwithstanding his being informed of possible mitigating circumstances, this should not relieve defense counsel of the need to inform a defendant that although the prosecutor is going to seek the death penalty, there is a possibility that the jury will find that the existence of mitigating circumstances, here age, youth, and lack of maturity, precludes imposition of the death penalty. We do not know if appellant would have been so intent on "saying anything to beat the death sentence" had he been fully apprised in this regard; had he

7. The opinion of Mr. Justice Packel asserts that there is no evidence that appellant would have refrained from pleading guilty if he had been more fully informed. I know of no authority which would permit this Court to uphold an invalid plea based upon such speculation.

known that mitigating circumstances was a possible means of avoiding the death penalty, he may have decided not to plead guilty.

Appellant's attorney failed to give effective counsel, therefore appellant's request to withdraw his plea of guilty should have been granted. I dissent.