333 A.2d 739
**COMMONWEALTH of Pennsylvania**
**v.**
**Frank E. JOHNSON, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 15, 1974.

Decided March 18, 1975.

Vincent J. Ziccardi, Defender, John W. Packel, Chief, Appeals Div., Defender Assn. of Phila., Philadelphia, for appellant.

F. Emmett Fitzpatrick, Jr., Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., David Richman, Asst. Dist. Atty., Chief, Appeals Div., James Garrett, Asst. Dist. Atty., Abraham J. Gafni, Deputy Dist. Atty., for Law, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

### OPINION OF THE COURT

POMEROY, Justice.

This appeal stems from appellant's plea of guilty to a general charge of murder in 1961 and his subsequent ef-

forts to obtain judicial review of the validity of that plea.

On January 27, 1961, Frank Johnson, the appellant, appeared at a Philadelphia police station and voluntarily surrendered himself in connection with the fatal stabbing of his mother-in-law, Mattie Aquilar. Johnson gave a written confession to the police,[1] the essence of which was that Johnson had stabbed his mother-in-law the previous evening during the course of a heated argument, and while he was intoxicated. Johnson was thereupon formally arrested and charged with murder and voluntary manslaughter.

On October 30, 1961, when his case was called for trial, appellant, represented by counsel, pleaded guilty to murder generally, the District Attorney certifying to the court that the crime rose no higher than murder in the second degree. After receiving evidence presented by the Commonwealth and appellant, the court accepted the plea and found appellant guilty of murder in the second degree. Sentence of imprisonment of ten to twenty years was imposed. No appeal was then taken from the judgment of sentence.

During the next several years, Johnson unsuccessfully attempted to obtain the transcript of his degree of guilt hearing in order that he might challenge his conviction. Finally, in 1968, he filed a *pro se* petition for collateral relief under the Post Conviction Hearing Act.[2]

On July 25, 1968, following a hearing on the petition, the PCHA court concluded that at the time appellant was sentenced he had not been advised of his appellate rights, and ordered that appellant be permitted to file a direct appeal nunc pro tunc and that counsel be appointed to as-

---

1. The voluntariness of this confession is not questioned in this appeal.

2. Act of January 25, 1966, P.L. 1580, 19 P.S. § 1180–1 et seq., (Supp.1974).

sist in that appeal. Inexplicably, counsel was not appointed for this purpose until April 25, 1969, and even then, through no fault of appellant, no appeal was filed.

In 1971, having served his minimum sentence, Johnson was released from custody and placed on parole. With the assistance of the Public Defender he then filed a second petition for post-conviction relief alleging, again, a denial of his right of appeal and, further, that his plea of guilty had not been entered voluntarily.

An evidentiary hearing was held on this petition on January 31, 1973. By this time, both the judge who had accepted appellant's guilty plea and appellant's trial counsel were deceased, and the assistant district attorney who had prosecuted the case no longer possessed an independent recollection of the 1961 guilty plea proceedings. The sole witness available to testify at the hearing was, therefore, the appellant himself. He testified as to both issues raised in his petition, i. e. the failure of court-appointed counsel to assist him in filing the appeal nunc pro tunc as ordered by the court in 1968, and the circumstances surrounding his decision to enter a plea of guilty. The substance of appellant's testimony with regard to the latter issue was that, although he had pleaded guilty upon the advice of counsel in order to avoid the imposition of the death penalty, his decision was, nevertheless, wholly uninformed. Specifically, Johnson stated that he had not been told, either by counsel or the trial court, of his right to trial by jury and to an appeal therefrom; of the presumption of innocence to which he would be entitled should he proceed to trial; of the nature of the charges against him and the acts which comprised those crimes; nor, finally, of the possible defenses which might be available to him.

Having heard the testimony, the PCHA court concluded, once again, that Johnson had been denied his right of appeal and again ordered that counsel be appointed to aid in the preparation of an appeal nunc pro tunc. The

hearing court declined, however, to pass on the merits of the claim that the guilty plea had been made involuntarily because, in his view, that issue would be cognizable on direct review. The court therefore denied post-conviction relief except for the right to appeal from the judgment of sentence. This appeal followed.[3]

The record before us contains no transcript of the proceedings in which Johnson entered his plea of guilty. Although at the time the plea was taken it was not mandatory that such a record be made, see *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 237 A.2d 196 (1968), it has, nevertheless, long been essential that the trial court, before accepting a guilty plea, make a determination, through inquiry of the defendant, that the plea is being entered by the defendant intelligently and voluntarily, i. e. with full knowledge of the nature of the plea and the attendant consequences. *Commonwealth ex rel. West v. Rundle, supra; Commonwealth v. Grays,* 428 Pa. 109, 237 A.2d 198 (1968) ; *Commonwealth ex rel. Barnosky v. Maroney,* 414 Pa. 161, 199 A.2d 424 (1964).[4] In "silent record" cases such as this, therefore, whether the trial

**3.** The record does not reveal whether the appeal is from the judgment of sentence or the order of the post-conviction hearing court denying relief except as it allows Johnson to exercise his appellate rights. Appellant's brief indicates that the appeal is from the latter; the brief of the Commonwealth indicates it is from the former. Since the arguments presented are applicable to both the judgment and the order, we will consider the appeal as taken from both. In such a situation, of course, proper practice would require two separate appeals.

**4.** It was, of course, in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1967), that the Supreme Court of the United States held, as a matter of federal constitutional law, that a trial court which does not conduct an *on the record* colloquy with the defendant in order to determine that the guilty plea is being entered knowingly, intelligently, and voluntarily commits reversible error. In *Commonwealth v. Godfrey,* 434 Pa. 532, 254 A.2d 923 (1969), this Court declined to apply the rule of *Boykin* wholly retrospectively, but rather held that it is to be applied only to those cases which were tried after our decision in *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 237 A.2d 196 (1968).

court did, indeed, make the requisite determination is necessarily a factual matter to be resolved, in the first instance, in an evidentiary hearing. *Commonwealth ex rel. West v. Myers*, 423 Pa. 1, 222 A.2d 918 (1966). See *Commonwealth v. Miller*, 454 Pa. 67, 309 A.2d 705 (1973); *Commonwealth v. Cushnie*, 433 Pa. 131, 249 A. 2d 290 (1969); *Commonwealth v. Hill*, 427 Pa. 614, 235 A.2d 347 (1967).

Thus, while the court below quite properly conducted an evidentiary hearing on the allegation of involuntariness, it was incorrect in its assumption that this Court could resolve an issue which is, essentially, one of credibility. Such an undertaking by an appellate court, is, of course inappropriate. We, therefore, must remand to the court below for findings of fact on the voluntariness issue based upon the testimony at the evidentiary hearing, and an appropriate disposition of the post-conviction petition in the light of such findings.

The judgment of sentence is vacated and the order of the court of common pleas entered April 23, 1973 is vacated insofar as it denied post-conviction relief other than the right to appeal, and the case is remanded to that court for further proceedings consistent with this opinion. Should the trial court determine that appellant's guilty plea was involuntarily made, a new trial is hereby ordered; should the court determine that the plea was voluntarily entered, the judgment of sentence is reinstated, and appellant may appeal therefrom and from the new order of the hearing court. In the event such appeals are taken, the present briefs of the parties may be utilized, appropriately supplemented as the parties may deem desirable.