J-S21026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL RAYMOND NEVARRE | : | |
| | : | |
| Appellant | : | No. 1305 WDA 2019 |

Appeal from the PCRA Order Entered July 24, 2019
In the Court of Common Pleas of Cambria County Criminal Division at
No(s):  CP-11-CR-0000717-2018

BEFORE:  LAZARUS, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:                    **FILED MAY 26, 2020**

Appellant, Daniel Raymond Nevarre, appeals from the July 24, 2019 Order entered in the Cambria County Court of Common Pleas dismissing as meritless his first Petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S §§ 9541-9546.  After careful review, we adopt the PCRA court's November 7, 2019 Opinion as our own and affirm the dismissal of Appellant's Petition.

Appellant is a physician and owner of Plastic Surgical Associates of Johnstown, Inc.  An investigation conducted by the Pennsylvania Office of the Attorney General revealed that from January 2010 to January 2017, Appellant had routinely engaged in improper and fraudulent billing practices.  Accordingly, the Commonwealth filed a two-count Information, charging

Appellant with making a False or Fraudulent Medical Assistance Claim and Insurance Fraud.[1]

On May 25, 2018, Appellant, represented by Attorneys Arthur McQuillan and Michael McCarrie, appeared before the trial court for a guilty plea hearing. Initially, Appellant expressed confusion over the impact his guilty plea would have on his medical license. Appellant's counsel and the court explained to Appellant that actions concerning his medical license were within the purview of the Pennsylvania State Board of Medicine ("Board"), and were collateral consequences over which the court did not exercise control. The court recessed for Appellant to consult with counsel.[2] Following this recess and further inquiry by the court as to whether Appellant understood the possible impact of a guilty plea on his medical license, Appellant confirmed that he wished to plead guilty, and entered a guilty plea to the above offense. In particular, Appellant indicated that: (1) he understood the rights he was giving up by entering his plea; (2) he understood the terms of the plea agreement; (3) no other promises were made to him; (4) he had not been threatened into pleading guilty; (5) he understood his right to a trial; (6) he fully understood what he was doing; (7) he was satisfied with his counsels' representation; and (8) he was entering his plea voluntarily and of his own free will. N.T., 5/28/18, at 3-10.

---

[1] 62 P.S. § 1407(a)(1) and 18 Pa.C.S. § 4117(a)(2), respectively.

[2] Attorney McQuillan was present at the hearing and Attorney McCarrie consulted by telephone.

That same day, the court sentenced Appellant to pay restitution and serve two concurrent 6- to 23- month sentences of incarceration, followed by 56 months of probation. Appellant did not file a Post-Sentence Motion or direct appeal from his Judgment of Sentence. His sentence, thus, became final on June 27, 2018, upon expiration of time to file a direct appeal. *See* Pa.R.A.P. 903(a); 42 Pa.C.S. § 9545(b)(3).

On May 24, 2019, Appellant filed *pro se* the instant PCRA Petition in which he claimed that his plea counsel had been ineffective and that counsel's ineffectiveness caused him to enter into an unlawful guilty plea. PCRA Petition, 5/21/19, at 2. In particular, Appellant averred that he entered his plea under the duress caused by the threat of civil asset forfeiture, that the applicable medical guidelines conflict with the filed charges, and that the charge dates were outside of the applicable 5-year statute of limitations, but his counsel failed to assert these defenses.[3] *Id.* at 3, 7.

On July 23, 2019, the PCRA court held a hearing on Appellant's Petition. At the hearing, the Commonwealth presented the testimony of Appellant's plea counsel, Attorneys McCarrie and McQuillan. Appellant testified on his own behalf. Following the hearing, on July 24, 2019, the PCRA court concluded

---

[3] Appellant also filed a request to proceed *in forma pauperis*, which the PCRA court denied. Accordingly, the court instructed Appellant that he had 30 days to obtain counsel. Appellant declined to obtain counsel and proceeded *pro se*.

that Appellant failed to present any evidence that he did not enter his plea knowingly and voluntarily, and denied Appellant's Petition as meritless.

This appeal followed.[4]  Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises the following issue on appeal:

[] Did the PCRA court err by dismissing [Appellant's] PCRA Petition where he proved his plea was involuntary because his prior attorneys rendered ineffective assistance when they advised Appellant to plead guilty without reviewing the evidence against him or his proffered defenses?

Appellant's Brief at 2.

We review the denial of a PCRA Petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error.  **Commonwealth v. Fears**, 86 A.3d 795, 803 (Pa. 2014).  This Court grants great deference to the findings of the PCRA court if the record supports them.  **Commonwealth v. Boyd**, 923 A.2d 513, 515 (Pa. Super. 2007). We give no such deference, however, to the court's legal conclusions. **Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012).

The law presumes counsel has rendered effective assistance. **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa. Super. 2010).  "[T]he burden of demonstrating ineffectiveness rests on [A]ppellant." **Id.** (citation omitted).  To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable

---

[4] Appellant retained private counsel, who filed a Notice of Appeal on Appellant's behalf.

- 4 -

merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." *Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003) (citation omitted). Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim. *Commonwealth v. Jones*, 811 A.2d 994, 1002 (Pa. 2002).

"Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary of unknowing plea." *Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super. 2012) (citation omitted). "Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.* at 338-39 (citation omitted). "The law does not require that the defendant be pleased with the outcome of his decision to plead guilty: All that is required is that [his] decision to plead guilty be knowingly, voluntarily, and intelligently made." *Commonwealth v. Anderson*, 995 A.2d 1184, 1192 (Pa. Super. 2010) (citation omitted). With respect to the prejudice prong, the defendant who entered a guilty plea must demonstrate that "it is reasonably probable that, but for counsel's errors, he would not have pleaded guilty and would have gone to trial."

*Commonwealth v. Rathfon*, 899 A.2d 365, 370 (Pa. Super. 2006) (citation omitted).

Instantly, Appellant claims that the trial court erred in denying his Petition because he presented evidence that his counsels' defective advice caused him to enter an unknowing and involuntary plea. Appellant's Brief at 12. In particular, Appellant asserts that his counsel: (1) advised him to plead guilty without first determining what evidence the Office of the Attorney General had to support the charges against him; (2) fundamentally misunderstood Appellant's proffered defense related to the use of billing codes; and (3) ignored Appellant's exculpatory evidence. *Id.* at 12-24.

The Honorable Norman A. Krumenacker, III, who presided over Appellant's guilty plea hearing, has authored a comprehensive, thorough, and well-reasoned Rule 1925(a) Opinion, citing to the record and relevant case law in addressing each of Appellant's ineffectiveness claims. After a thorough review of the certified record, the briefs of the parties, the applicable law, and the PCRA court's Opinion, we conclude that there is no merit to Appellant's claims. Accordingly, we adopt that Opinion as our own and affirm the court's denial of PCRA relief. *See* Trial Ct. Op., 11/7/19, at 7-15 (concluding that Appellant failed to satisfy the three prongs of the ineffective assistance of counsel test because, *inter alia*: (1) Appellant's counsels' credible testimony indicated that: (a) they understood the coding defense but did not believe it would be effective given the Commonwealth's evidence; and (b) they considered all of the information available to them when advising Appellant,

including Appellant's allegedly exculpatory evidence; (2) Appellant did not offer any testimony or evidence that counsels' conclusion that Appellant's proffered defenses lacked merit was not reasonable; and (3) Appellant failed to present any evidence that his counsel's advice was outside of "the range of competence demanded of attorneys in criminal cases").

The parties are instructed to annex the trial court's November 7, 2019 Opinion to any future filings.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/26/2020

**IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | * * * * |
| vs. | * No. CP-11-CR-0717-2018 * * |
| DANIEL RAYMOND NEVARRE, | * Opinion Pursuant to Rule of * Appellate Procedure 1925(a)(1) |
| Defendant. | * * |

# Opinion Pursuant to Rule of Appellate Procedure 1925(a)(1)

**Krumenacker, P.J.:** Daniel Raymond Nevarre (Nevarre) appeals from the denial of his Petition for Post-conviction Relief on July 24, 2019, following a hearing held July 23, 2019. Nevarre filed a timely Notice of Appeal and Concise Statement of Errors Complained of on Appeal (Concise Statement) pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). In his Concise Statement, Nevarre asserts that plea counsel was ineffective for these reasons:

1) Plea counsel misunderstood Nevarre's proffered defenses.

2) Plea counsel ignored exculpatory evidence provided by Nevarre.

3) Plea counsel threatened that Nevarre would be subject to civil asset forfeiture if he did not enter a guilty plea.

4) Plea counsel failed to determine what evidence the Commonwealth had against Nevarre.

5) Plea counsel failed to interview any witnesses, employees, or alibi witnesses.

6) Plea counsel failed to inform Nevarre of the evidence the Commonwealth allegedly possessed.

7) Plea counsel failed to challenge the Commonwealth's evidence but merely accepted it at face value.

8) Plea counsel failed to investigate various defenses Nevarre wished to raise.

For the reasons contained herein the appeal should be dismissed and the Court's order of July 24, 2019, should be affirmed.

# CASE HISTORY

The charges in this matter arose out of an investigation conducted by the Pennsylvania Office of Attorney General (OAG) via the 40th Statewide Investigating Grand Jury. The OAG investigation focused on improper and fraudulent billing by Nevarre for the removal of cancerous lesions and for eyelid surgery. The Commonwealth filed a two count information as follows

### Count 1 Provider Prohibited Acts – False Information/Claims – 62 P.S. § 1407(a)(1) Third Degree Felony

On or about January 4, 2010 through January 3, 2017, the Actor did knowingly submit false information to Medical Assistance for the purpose of obtaining greater compensation than that to which he was legally entitled, namely, the Actor in his capacity as the owner and operator of Plastic Surgical Associates of Johnstown, Inc. submitted and/or caused to be submitted Medicaid claims and/or submitted false information which misrepresented the services rendered, in violation of 62 P.S. § 1407(a)(1). This statute provides an exception to the general statute of limitations under 42 Pa C.S. §5552,

### Count 2 Insurance Fraud – 18 Pa. C.S. § 4117(a)(2) Third Degree Felony

On or about January 4, 2010 through January 3, 2017, the Actor did knowingly and with the intent to defraud an insurer or self-insured, namely, Highmark Blue Cross / Blue Shield, UPMC and Medicare, present or cause to be presented to Highmark Blue Cross / Blue Shield, UPMC, and Medicare any statement forming a part of or in support of any insurance claim, that contained false, incomplete, or misleading information concerning any fact or thing material to the insurance claim, namely, the Actor in his capacity as the owner and operator of Plastic Surgical Associates of Johnstown, Inc., submitted or

caused to be submitted insurance claims which misrepresented the services rendered, in violation of Section 4117(a)(2) of the Pennsylvania Crimes Code, Act of December 6, 1972 as amended, 18 Pa. C.S. § 4117(a)(2). This is an exception to the applicable statute of limitations under 42 Pa C.S. §5552 (d).

Crim. Inf. 5/25/18 (emphasis in original). The Affidavit of Probable Cause summarized the allegations against Nevarre as follows

> The investigation revealed that Dr. Daniel Nevarre, owner of Plastic Surgical Associates of Johnstown, routinely billed for services not rendered. Specifically, the Actor billed for removal of cancerous tissue when in fact the tissue samples were not cancerous. The Actor also billed for eyelid reconstruction surgeries that were never completed.

Crim. Compl. Aff. Prob. Cause ¶ B.

On May 25, 2018, Nevarre entered guilty pleas to both counts of the information. N.T. 5/25/18. As part of his plea Nevarre agreed to pay restitution to Highmark Blue Cross/Blue Shield (Highmark), UPMC, Medicare, and Medicaid and serve a sentence of six (6) to twenty-three (23) months. Id. Nevarre was represented by attorneys Arthur McQuillan (McQuillan) and Michael McCarrie (McCarrie) on his criminal case and by McCarrie and his partner Charlie Artz (Artz) in a related civil matter.

During his plea Nevarre initially indicated confusion as to the possible impact a guilty plea would have on his medical license. N.T. 5/25/18 pp. 4-7. Both McQuillan and the Court explained that any actions concerning his medical license would be up to the Pennsylvania State Board of Medicine (Board) and would be a collateral consequence of the guilty plea over which the Court had no control. Id. A recess was taken to allow Nevarre to further consult with McQuillan as well McCarrie who was not present but was telephoned. Following this recess and further inquiry by the Court as to whether Nevarre understood the possible impact of his guilty plea on his license Nevarre indicated he wished to enter a guilty plea. Id. pp 8-10. As part of both his written and oral plea colloquy Nevarre indicated that: he

understood the rights he was giving up by entering his plea; he understood the terms of the plea agreement; there were no other promises made to him; he had not been threatened; he understood his right to either a jury or non-jury trial; he fully understood what he was doing; he was satisfied with his counsels' work; and that he was entering the plea voluntarily and of his own free will. Id. pp. 3-10.

Following the entry of his plea Nevarre was sentenced as follows[1]:

1) At docket number 0717-2018 Count 2— to pay the costs of prosecution, pay an administration fee of three hundred dollars ($300), pay restitution to Highmark of $101,669.10 and to UPMC of $86,083.64, and to serve a period of incarceration of six (6) to twenty-three (23) months with a consecutive thirty-six (36) months of probation. Nevarre's sentence was to be served as six (6) months on house arrest with electronic monitoring and the remaining seventeen (17) months under supervision. Nevarre's sentence was in the standard range for this offense and in accordance with the terms of his plea agreement.

2) At docket number 0717-2018 Count 1 – to pay the costs of prosecution, pay an administration fee of three hundred dollars ($300), pay restitution to Medicaid of $14,907.18 and Medicare of $86,314.08, and to serve a period of incarceration of six (6) to twenty-three (23) months with a consecutive thirty-six (36) months of probation concurrent with docket number 0717-2018 Count 2. Nevarre's sentence was to be served as six (6) months on house arrest with electronic monitoring and the remaining seventeen (17) months under supervision. This sentence was in the

---

[1] A pre-sentence investigation (PSI) had been completed prior to the entry of the plea and McQuillan had filed a Pre-sentence Memorandum of behalf of Nevarre.

standard range for this offense and in accordance with the terms of his plea

agreement.

Id. pp. 22-24.

# DISCUSSION

Our Supreme Court recently has explained a petitioner's burden under the PCRA as

follows

> Preliminarily, in order to qualify for relief under the PCRA, a petitioner must establish, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa. C.S. § 9543(a)(2); that his claims have not been previously litigated or waived; and that the failure to litigate the issue prior to or during trial or on direct appeal could not have been the result of any rational, strategic, or tactical decision by counsel. Id. § 9543(a)(3), (a)(4).
>
> Additionally, to obtain relief under the PCRA based on a claim of ineffectiveness of counsel, a PCRA petitioner must satisfy the performance and prejudice test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Pennsylvania, we have applied the Strickland test by requiring a petitioner to establish that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. Commonwealth v. Pierce, 567 Pa. 186, 786 A.2d 203, 213 (2001). Counsel is presumed to have rendered effective assistance, and, if a claim fails under any required prong of the Strickland test, the court may dismiss the claim on that basis. Commonwealth v. Ali, 608 Pa. 71, 10 A.3d 282, 291 (2010).

Commonwealth v. VanDivner, 644 Pa. 655, 665–66, 178 A.3d 108, 114 (2018). "A

reasonable probability is a probability that is sufficient to undermine confidence in the

outcome of the proceedings." Commonwealth v. Collins, 598 Pa. 397, 957 A.2d 237, 244

(2008) (citing Strickland, 466 U.S. at 694, 104 S.Ct. 2052).

Where a defendant seeks post-conviction relief on the basis of an unknowing or

involuntary guilty plea, they bear the burden of proving, by a preponderance of the evidence,

that the plea was involuntary and unknowingly entered. Commonwealth v. Carter, 318 Pa. Super. 252, 264, 464 A.2d 1327, 1334 (1983). With regard to the voluntariness of a plea, a guilty plea colloquy must "affirmatively demonstrate the defendant understood what the plea connoted and its consequences." Commonwealth v. Lewis, 708 A.2d 497, 501 (Pa. Super. 1998). Once the defendant has entered a guilty plea, "it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him." Commonwealth v. Bedell, 954 A.2d 1209, 1212 (Pa. Super. 2008). Where the record shows that a proper colloquy was conducted before the defendant entered his guilty plea the burden is on the defendant to show that the plea was not intelligent and voluntary. See, Commonwealth v. Ingram, 455 Pa. 198, 316 A.2d 77 (1974); Commonwealth ex rel. West v. Rundle, 428 Pa. 102, 237 A.2d 196 (1968). Finally, the determination of whether the plea was knowing and voluntary is necessarily a factual matter to be resolved by the trial court. Commonwealth v. Johnson, 460 Pa. 303, 333 A.2d 739 (1975); Commonwealth v. Gray, 317 Pa. Super. 248, 251, 463 A.2d 1179, 1180 (1983).

Our Superior Court has further explained that

[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

Commonwealth v. Moser, 921 A.2d 526, 531 (Pa. Super. 2007) (internal quotations and citations omitted). "Thus, to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Commonwealth v. Barndt, 74 A.3d 185, 192 (Pa. Super. 2013) (citation and internal quotation marks omitted).

In his first issue, Nevarre asserts that plea counsel misunderstood his proffered defense related to the use of medical billing codes. Nevarre testified on his own behalf at the July 23rd hearing and the Commonwealth presented testimony from McQuillan and McCarrie. Nevarre testified that he wished to present a defense arguing that his actions were proper under the Medicare and Medicaid guidance's related to the use of various billing codes and that plea counsel did not understand those arguments. N.T. 7/23/19 pp. 5-7. McCarrie testified that his primary practice relates to healthcare fraud and compliance and that he is familiar with the billing codes. Id. pp. 44-47. He explained that he and McQuillan had met with attorneys from the OAG and reviewed the evidence that had been collected which included: pictures of patients showing no signs of surgery; statements from approximately ten (10) patients, who were prepared to testify, indicating they or their medical insurance had been billed for surgeries that were not performed; statements from between eight (8) and ten (10) of Nevarre's employees, who were prepared to testify, indicating that he had recoded services in a patient's record to services that were not provided; and statements from these employees that Nevarre would bill insurance providers for services not provided. Id. at pp. 46-48.

He further testified that based on his experience and review of the evidence against Nevarre the plea offered was "extremely favorable to Dr. Nevarre." Id. p. 51. McCarrie explained that there was significant evidence against Nevarre and that the longer the investigation continued the OAG was discovering more evidence against Nevarre. Id. pp. 51-54. McCarrie indicated that he and McQuillan sought to end the investigation and avoid further charges by proactively seeking an early plea agreement favorable to Nevarre. Id. pp. 49, 54-55. McCarrie noted that regardless of coding practices a provider cannot code and bill for a service that was not provided and that the OAG had patients and employees prepared to testify that Nevarre was doing precisely that. Id. pp. 56-61. McCarrie testified that based upon

his review of the evidence and his understanding of the codes he did not believe the defense Nevarre wished to present related to coding issues would be effective. Id. pp 51-61.

McQuillan testified that he was brought into the case at the suggestion of attorney Andrew Barbin (Barbin) who was Nevarre's general attorney. Id. p. 67. McQuillan testified that he reviewed the OAG's evidence which showed: they had reviewed more than 460 of Nevarre's patient files; had statements from patients related to bills for services not provided; had patients prepared to testify there were billed for eyelid surgeries that were not performed; had pathology reports related to four (4) excisions that Nevarre billed as cancerous showing they were in fact non-cancerous; had statements from Nevarre's employees indicating Nevarre would cross out and change codes in patient's records; and had statements from Nevarre's employees indicating Nevarre had billed for services not performed. Id. pp. 68-78. McQuillan indicated that based on the evidence in possession of the OAG he believed it was in Nevarre's best interest to end the investigation early in order to obtain the most favorable deal possible. Id. pp. 77-78.

A review of the testimony presented at the July 23rd hearing shows that McQuillan and McCarrie both understood the issues Nevarre wished to raise related to coding but concluded that the defense was not practical given the Commonwealth's evidence. Other than his own self-serving testimony, Nevarre offered no testimony to show that this conclusion by two experienced criminal defense attorneys was erroneous or that his proffered defense was likely to be successful. Accordingly, Nevarre failed to establish that plea counsel was ineffective for not understanding his proffered defense, rather the evidence shows that they understood and considered the defense and found it lacking in light of the evidence.

Nevarre next contends that plea counsel was ineffective for ignoring exculpatory evidence he provided to them. Other than his own self-serving testimony, Nevarre offered no

testimony or evidence showing that he provided plea counsel with exculpatory evidence that they ignored. There was no testimony from McQuillan or McCarrie, either on direct or cross-examination, which shows they ignored any evidence or defenses Navarre brought to their attention. Their testimony, when read as a whole, demonstrates they considered all the information available to them whether provided by the OAG or Navarre when advising Navarre relative to his option to enter a guilty plea or proceed to trial. Accordingly, Navarre failed to establish that plea counsel was ineffective for ignoring exculpatory evidence.

Navarre next contends that plea counsel induced him to enter his plea by threatening that he would be subject to civil asset forfeiture if he did enter a guilty plea. Again other than his own testimony Navarre offered no evidence in support of this assertion. McCarrie testified that he never discussed the possibility of asset forfeiture relative to the criminal charges with Navarre but focused on the amounts of restitution being sought by the insurers. N.T. 7/23/19 p. 49. McCarrie explained that he sought to limit Navarre's exposure to restitution claims by halting the investigation via an early and favorable plea for Navarre. Id. McQuillan testified that the OAG never threatened Navarre with civil assert forfeiture and forfeiture was never an issue in the criminal case. Id. pp. 79-81. McQuillan opined that Navarre was comingling the criminal and civil cases and that he consulted with attorney Barbin to confirm that none of the restitution in the criminal matter was a double dip from the civil action. Id. p. 80; Cmwlth. Ex. 3. Accordingly, Navarre failed to establish that plea counsel was ineffective for inducing him to enter a plea based on the threat of civil assert forfeiture.

Navarre next contends that plea counsel failed to determine what evidence the Commonwealth had against him and to consider that evidence in light of his proffered defenses and exculpatory evidence. The record reveals that there is no basis for this assertion. McCarrie testified that he and McQuillan met with attorneys from the OAG and reviewed the

evidence that had been collected against Nevarre which included: pictures of patients showing no signs of surgery; statements from approximately ten (10) patients, who were prepared to testify, indicating they or their medical insurance had been billed for surgeries that were not performed; statements from between eight (8) and ten (10) of Nevarre's employees, who were prepared to testify, indicating that he had recoded services in a patient's record to services that were not provided; and statements from these employees that Nevarre would bill insurance providers for services not provided. Id. at pp. 46-48, 52-55. McCarrie explained that there was significant evidence against Nevarre and that the longer the investigation continued the OAG was discovering more evidence against Nevarre. Id. pp. 51-54. He further testified that based on his experience and review of the evidence against Nevarre the plea offered was "extremely favorable to Dr. Nevarre." Id. p. 51.

McQuillan testified that he reviewed the OAG's evidence which showed: they had reviewed more than 460 of Nevarre's patient files; had statements from patients related to bills for services not provided; had patients prepared to testify there were billed for eyelid surgeries that were not performed; had pathology reports related to four (4) excisions that Nevarre billed as cancerous showing they were in fact non-cancerous; had statements from Nevarre's employees indicating Nevarre would cross out and change codes in patient's records; had statements from Nevarre's employees indicating Nevarre had billed for services not performed. Id. pp. 68-78. McQuillan indicated that based on the evidence in possession of the OAG he believed it was in Nevarre's best interest to end the investigation early in order to obtain the most favorable deal possible. Id. pp. 77-78. Other than his own testimony, Nevarre has offered no evidence or testimony to dispute this testimony by plea counsel and the Court found their testimony credible. Accordingly, Nevarre failed to establish that plea counsel was ineffective for failing to review and carefully consider the Commonwealth's evidence against

him.

Nevarre next contends that the evidence establishes plea counsel was ineffective for failing to interview and witnesses, employees, or alibi witnesses. In order for a defendant to establish that trial counsel was ineffective for failing to present witnesses, he must establish: 1) the witnesses existed; 2) the witnesses were available; 3) that counsel was informed of the existence of the witnesses or should have known of the witnesses' existence; 4) that the witnesses were available and prepared to cooperate and would have testified on the defendant's behalf; and 5) the absence of the testimony prejudiced the defendant. Commonwealth v. Crawley, 541 Pa. 408, 415, 663 A.2d 676, 679-80 (1995). Nevarre has failed to establish any of these elements as he presented no evidence to support his assertions. Relative to the patients and employees who had cooperated with the investigations and were prepared to testify, Nevarre failed to establish that these witnesses were willing to be interviewed by his plea counsel. Further, Nevarre has failed to establish that he was prejudiced by plea counsels asserted failure by demonstrating that the witnesses had recanted their statements to the investigators. Relative to potential alibi witnesses Nevarre has offered no evidence that such witnesses existed and were available and prepared to cooperate with his defense team. In contrast both McCarrie and McQuillan testified that Nevarre never presented them with the names of potential alibi witnesses. N.T. 7/23/19 pp. 53, 74. Accordingly, Nevarre failed to establish that plea counsel was ineffective for failing to interview any witnesses, employees, or alibi witnesses.

Nevarre next argues that plea counsel was ineffective for failing to inform him of the evidence the Commonwealth allegedly possessed. It is well settled that "[a] person who elects to plead guilty is bound by the statements he makes in open court while under oath and he may not later assert grounds for withdrawing the plea which contradict the statements he

made at his plea colloquy." Commonwealth v. Pollard, 832 A.2d 517, 523 (Pa. Super. 2003). Here Nevarre entered his plea following completion of a written plea colloquy, and an oral colloquy by the Court. N.T. 5/25/18; Pleader's Memorandum filed 5/25/18. During the Court's colloquy, Nevarre indicated that: he understood the terms of his plea agreement; he fully understood what he was doing by entering his plea; he had ample opportunity to consult with counsel before entering his plea; his plea was voluntary; no one had made any threats or promises related to sentencing; and that he was satisfied with counsels' work. N.T. 5/25/18 pp. 3-10. When read as a whole the guilty plea transcript reveals that Nevarre was aware of the Commonwealth's case against him, including the evidence they possessed, and that he had discussed this evidence with counsel. Finally, the Court finds it extremely doubtful that an intelligent and well-educated defendant such as Nevarre would not discuss the evidence arrayed against him with counsel prior to agreeing to plead guilty. Accordingly, Nevarre failed to establish that plea counsel was ineffective for failing to inform him of the evidence the Commonwealth allegedly possessed.

Nevarre next asserts that plea counsel failed to challenge the Commonwealth's evidence but merely accepted it at face value. As noted above plea counsel met with representatives of the OAG to review their evidence against Nevarre which included patient records seized from Nevarre's office and statements by patients and employees. Nevarre presented no testimony or evidence to show that prior to the entry of his plea he questioned the veracity of the Commonwealth's evidence, much of which came from his own records, such that counsel had reason to believe the evidence was inaccurate. As to the witness statements, Nevarre has not shown that plea counsel acted unreasonably in accepting that the patients and employees who provided statements to the OAG's investigators and testimony before the investigating grand jury would testify at trial consistent with their previous

statements. Accordingly, Nevarre failed to establish that plea counsel was ineffective for accepting that the Commonwealth's evidence at trial would be consistent with the information provided during counsels' meeting with OAG attorneys.

Finally, Nevarre asserts that plea counsel failed to investigate various defenses he wished to pursue. Nevarre argues that plea counsel failed to consider defenses related to:

     a.  the correctness of billing codes used;

     b.  ability to defend against claims that he improperly billed for surgeries not performed;

     c.  suppression and spoliation issues;

     d.  statute of limitations;

     e.  under/overpayment calculations;

     f.  line audits showing the accuracy of billing practices;

     g.  the "without cause" termination by UPMC and the settlement and release with Highmark.

McQuillan and McCarrie testified that Nevarre raised these possible defenses with them, that they considered each one in turn, and that they ultimately concluded that none were viable. N.T. 7/23/19 pp. 44-97.

> As noted *supra*
>
> To prevail on a claim alleging counsel's ineffectiveness under the PCRA, [a petitioner] must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, i.e. there is a reasonable probability that but for the act or omission in question the outcome of the proceedings would have been different.

Commonwealth v. Willis, 68 A.3d 997, 1001-1002 (Pa. Super. 2013) (quoting

Commonwealth v. Wah, 42 A.3d 335, 338 (Pa. Super. 2012)) (citations, quotation, and

quotation marks omitted). Further, the petitioner bears the burden of proving all three prongs of this test and the failure to prove any prong will be fatal to his claim of ineffectiveness. Commonwealth v. Brown, 582 Pa. 461, 474, 872 A.2d 1139, 1146 (2005). See also, Commonwealth v. Pierce, 567 Pa. 186, 786 A.2d 203, 213 (2001); Commonwealth v. Grant, 572 Pa. 48, 813 A.2d 726 (2002); Commonwealth v. Albrecht, 554 Pa. 31, 720 A.2d 693, 701 (1998); Commonwealth v. Baker, 531 Pa. 541, 562, 614 A.2d 663, 673 (1992). Nevarre offered no testimony or evidence that plea counsel's conclusion that these defenses lacked merit or was not reasonable under the circumstances of the case. As such he failed to establish the second prong of the ineffectiveness test.

As discussed *supra* "[w]here the defendant enters his plea on the advice of counsel, 'the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.'" Commonwealth v. Hickman, 799 A.2d 136, 141 (Pa. Super. 2002) (citation omitted). (citations and quotations omitted). Here Nevarre presented no evidence at his PCRA hearing that the advice provided by plea counsel was not "within the range of competence demanded of attorneys in criminal cases." Id. Accordingly, for the forgoing reasons this appeal should be dismissed and the Court's order of July 24, 2019, should be affirmed.

Finally, the Court observes, based upon its experience in this matter, that Nevarre's primary area of concern is not with plea counsels' performance but rather with the loss of his medical license – a circumstance of his own creation. As noted above, both the Court and plea counsel explained in detail the possibility that the entry of a guilty in this matter might impact Nevarre's medical license and that it would be up to the Board to determine what if any impact the guilty plea would have on his license status. N.T. 5/25/18 pp. 4-8; N.T. 7/23/19 pp.

50-51, 84-85. After this explanation and further discussion with plea counsel, Nevarre chose to enter his guilty plea.

On May 24, 2018, Nevarre filed with the Board an Application for Voluntary Surrender of License and by Final Order dated July 16, 2018, the Board marked his license inactive "Voluntary Surrender - Disciplinary". See, In the Matter of the Voluntary Surrender of the License to Practice as a Medical Physician and Surgeon filed by Daniel Raymond Nevarre, M.D., Bd. Med. File Nos. 18-49-005564, 18-49-004863 (July 16, 2018). Nevarre subsequently petitioned the Board to reinstate his license asserting that he had not intended to surrender his license to practice but only to "relinquish[] ... my insurance (Medicare, Medicaid and private) privileges." See, In the Matter of the Petition for Reinstatement of the License to Practice as a Medical Physician and Surgeon filed by Daniel Raymond Nevarre, M.D., Bd. Med. Case No. 18-49-00822P, p. 1 (Sept. 19, 2018). The Board denied the petition but noted "that, pursuant to the terms of the Application, if [Nevarre] desires, he may reapply for licensure in this Commonwealth, but will be subject to the requirements in effect at the time of application." Id. p. 3. Thus in order to obtain his license to practice again in the Commonwealth Nevarre would have to file a new application and comply with the current license requirements rather than the simpler process of renewing/reinstating his current license.

Respectfully submitted,

Norman A. Krumenacker, III, P.J.

November 7, 2019

COPIES TO:
❑ DEF.   ❑ C & F
☑ DA   ❑ SHERIFF
☑ ATTY.   ❑ OTHER
❑ PO
❑ PD
❑ JAIL
❑ JUDGE
❑ CA

-Page 15 of 15-